JOHN C. TROLAN, Appellant, *v.* LEROY S. ROGERS, Respondent.

*Doctrine of collateral warranty, abolished — estoppel does not arise from kinship alone — privity of estate — a claimant under an independent title.*

The doctrine of collateral warranty, to the effect that, although the title of an heir may not be derived from a warranting ancestor, yet the heir is estopped from claiming title to the land by any collateral title, and this upon the presumption that the heir may subsequently acquire assets by descent from or through the ancestor, has no existence in this State.

It was expressly abolished by section 141 of article 4 of title 2 of chapter 1 of part 2 of the Revised Statutes (1 R. S. 739), and was not continued in force by any expression contained in section 143 thereof.

Where the heirs of a warranting ancestor do not take the property from her nor claim under her, but claim as remaindermen by an independent title, there is no privity of estate between such heirs and their ancestor and no estoppel against them can arise upon her covenant.

Kinship alone, whether by affinity or consanguinity, cannot create a privity which can be made the basis of an estoppel; this can arise only where the heir represents the ancestor and continues the ancestor's estate.

Under the provisions of the will of William Gill, who died in January, 1857, as construed by this court on a former appeal, his widow, Hannah Gill, took a life estate in his real property, and at her death her children, Julius Gill and Julia Wiggins, each took a life estate in one-half of the property in severalty, and at the death of either the half of the party dying passed to his or her children, while the fee vested in the grandchildren of the testator immediately upon his death. In May, 1857, the widow and Julius Gill conveyed, by quit-claim deed, their interests to Julia Wiggins. In 1875 Julia Wiggins conveyed the premises in question to Leroy S. Rogers by a warranty deed in the usual form. Subsequently to the execution of this deed, and in October, 1875, Hannah Gill died, and in 1881 Julia Wiggins died intestate, leaving four children, one of whom, Ada E. Wiggins, became the wife of John C. Trolan. In 1884 Ada E. Wiggins died intestate, leaving issue of her marriage with John C. Trolan. Julius Gill is still living.

In an action brought by John C. Trolan to recover of Leroy S. Rogers, grantee of Julia S. Wiggins, the possession of one-fourth of the premises in question, upon the ground that as tenant by the curtesy he was entitled to the use during his life of the share given his wife under the will of her grandfather, and of which she was entitled to the possession upon the death of her mother, Julia Wiggins,

*Held*, that Ada E. Wiggins, subsequently wife of the plaintiff, did not take title by descent from her mother, nor did she claim under her mother;

That as her claim was by an independent title which vested at the death of her grandfather, William Gill, she was not estopped by the warranty deed given by her mother to the defendant, and that as tenant by the curtesy the plaintiff was entitled to recover.

APPEAL by the plaintiff, John C. Trolan, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Jefferson on the 26th day of November, 1894, upon the dismissal of the complaint directed by the court after a trial at the Jefferson Circuit before the court and a jury, with notice of an intention to bring up for review upon such appeal an order entered in said clerk's office in November, 1894, denying the plaintiff's motion for a new trial made upon the minutes.

The plaintiff in his complaint alleges that he is the owner for his own life, and is entitled to the possession of, an undivided one-fourth of certain real estate in the village of Antwerp. The defendant admits that he is in possession, and denies all the other allegations of the complaint, and alleges that he is the owner in fee of the entire property under a warranty deed given to him by Julia Wiggins on the 8th day of April, 1875.

The report of a former appeal appears in 79 Hun, 507.

*Henry Purcell*, for the appellant.

*Rogers & Atwell*, for the respondent.

MERWIN, J.:

The property in question was owned by William Gill at the time of his death on the 2d of January, 1857. He left a widow, Hannah Gill, and two children, Julius Gill and Julia Wiggins, the wife of Sullivan G. Wiggins. By his will, as construed by this court, his widow had a life estate in the whole property. At her death the two children had each the use during life of the one-half in severalty, and at the death of either, the half that the party dying was entitled to the use of, passed absolutely to his or her children. It was said that the fee vested in the grandchildren at the testator's death. On the 23d of May, 1857, the widow and Julius Gill executed to Julia Wiggins a quit-claim deed of the property in question with other property. On April 8, 1875, Julia Wiggins, with her husband, executed to the defendant a warranty deed of the premises in question for the consideration of $800, and defendant went into possession. The form of the covenant in the deed is as follows: "And the said Julia Wiggins and Sullivan G. Wiggins do

hereby covenant and agree to and with the said party of the second part, his heirs and assigns, that the premises thus conveyed in the quiet and peaceable possession of the said party of the second part, his heirs and assigns, they will forever warrant and defend against any person whomsoever lawfully claiming the same or any part thereof."

Hannah Gill died October 25, 1875. Julia Wiggins died intestate on the 21st of May, 1881, leaving four children, one of whom, Ada E., became the wife of the plaintiff on the 20th of May, 1875, and died February 21, 1884, intestate and leaving two children, the issue of the marriage. Julius Gill is still living. The plaintiff claims, as tenant by the curtesy, to be entitled to the use during his life of the share given to his wife by the will of her grandfather, and of which she was entitled to the possession on the death of her mother.

Upon the motion for a nonsuit several grounds were stated, but, in view of our former decision, the eighth ground is the only one now relied on by the respondent to sustain the nonsuit. That is as follows: "*Eighth.* That it appears that the heirs of Julia Gill have inherited from her real estate in excess of the value of the land in question, and to that extent they are bound by her warranty deed to the defendant, and are estopped from committing a breach of their own covenant to the extent of the property inherited by them of the deceased Julia Wiggins."

It was shown that Julia Wiggins at her death left real estate that descended to her heirs to the value of about $2,500. The value now of the land deeded to defendant was shown to be about $3,000.

The claim of the defendant is that the heirs at law of Mrs. Wiggins, including the plaintiff and his wife, are bound by the covenant of warranty in the deed to defendant and are estopped from claiming title. Undoubtedly the heirs are bound by the covenant to the extent that they are liable under the statute (Code, § 1843 *et seq.*), by reason of property descending to them from the decedent. If Mrs. Wiggins, after the conveyance to defendant, had acquired the fee, her heirs, seeking to claim it under her, would be estopped. (*Tefft* v. *Munson,* 57 N. Y. 97.) But here a different question is presented. The heirs of Mrs. Wiggins do not take this property by

descent from her, or claim under her, but by independent title, that vested at the death of their grandfather. As to this property there was no privity between Mrs. Wiggins and her heirs. "The term *privity* denotes mutual or successive relationship to the same rights of property." (1 Greenl. Ev. § 189.) The doctrine of estoppel as applicable to the different classes of privies, "applies to them under one and the same principle, namely, that a party claiming through another is estopped by that which estopped that other, respecting the same subject-matter." (*Stacy* v. *Thrasher*, 6 How. [U. S.] 59.) In 1 Freeman on Judgments (4th ed., § 162) it is said that "except to the extent which one person has succeeded to an estate or interest formerly held by another, there can be no privity between them, no matter what were or are their relations to each other or to the same piece of property. * * * Kinship, whether by affinity or consanguinity, does not create privity, except where it results in the descent of an estate from one to another." When an heir represents the ancestor and continues *his* estate, an estoppel may arise. (Bigelow on Estoppel [2d ed.], 337.) That is not the case here, as the heirs do not hold under the ancestor, but by an independent title accruing before the deed. We are referred to no case in this State where an heir in such a situation was estopped from claiming the land. In *Tefft* v. *Munson* (*supra*) and *Mygatt* v. *Coe* (142 N. Y. 78) the question here involved did not arise. Nor does *Thompson* v. *Simpson* (128 N. Y. 270) help the defendant. There, the heirs at law of a tenant by the curtesy, who had given a warranty deed purporting to convey the fee, were held to be precluded from asserting their title because, with full knowledge of the facts, they had received the proceeds of the sale. In *Van Rensselaer* v. *Kearney* (11 How. [U. S.] 297) the life tenant after the deed and before his death became the owner of the fee. So his heirs were held to be barred. In *Carbrey* v. *Willis* (7 Allen, 364, 368) the rule laid down was that a conveyance with full covenants of warranty would estop the grantor and those claiming under a title subsequently derived from him from claiming any interest in the premises.

The defendant in effect seeks to apply here the ancient doctrine of collateral warranty. That was where the heir's title was not derived from the warranting ancestor, and yet it barred the heir

from claiming the land by any collateral title, upon the presumption that he might thereafter have assets by descent from or through the ancestor, and it imposed upon him the obligation of giving the warrantee other lands in case of eviction, provided he had assets. (4 Kent's Com. 469; 2 Greenl. Cruise, 738.) This kind of warranty was deemed a grievous one (Rawle on Covenants [4th ed.], 382) and does not exist in our law.

Section 141, 4 Revised Statutes (8th ed.), 2452, is as follows: " § 141. Lineal and collateral warranties, with all their incidents, are abolished; but the heirs and devisees of every person who shall have made any covenant or agreement shall be answerable upon such covenant or agreement, to the extent of the lands descended or devised to them, in the cases and in the manner prescribed by law." Of this and the provision of the statute that no covenant shall be implied in any conveyance of real estate, it is said in 4 Kent's Commentaries, 470 : " These provisions leave the indemnity of the purchaser for failure of title, in cases free from fraud, to rest upon the express covenants in the deed, and they have wisely reduced the law on this head to certainty and precision, and dismissed all the learning of warranties which abounds in the old books, and was distinguished for its abstruseness and subtle distinctions." The remedy referred to in section 141 was regulated by other provisions of the statute, which have been in substance incorporated in the Code of Civil Procedure. (§ 1843 *et seq.*)

Section 143, 4 Revised Statutes (8th ed.), 2452, is as follows: " § 143. No greater estate or interest shall be construed to pass by any grant or conveyance hereafter executed than the grantor himself possessed at the delivery of the deed, or could then lawfully convey, except that every grant shall be conclusive as against the grantor and his heirs claiming from him by descent." The last clause of this section the defendant claims the benefit of, but it does not seem to apply here, as the plaintiff and the children of Mrs. Wiggins do not claim the property by descent from Mrs. Wiggins, defendant's grantor. The effect to be given to this section is considered in the *Thompson* case (page 285), and it is quite evident that the interests of remaindermen were not designed to be affected, nor was it designed to continue in such a case the doctrine of collateral warranty.

In the *Thompson* case the claimants were in the position of heirs to an ancestor who had given a warranty deed; still it does not seem to have been suggested that an estoppel could be based on the warranty in such a case, the heirs taking from an independent source.

It is claimed on the part of defendant that the case of *Carson* v. *New Bellevue Cemetery Co.* (104 Penn. St. 575) is in point. There it was held that a warranty by a tenant by the curtesy is a bar to the heir taking by descent from his warranting ancestor assets of equal value to the land warranted. There seems to be in Pennsylvania no statute like the one in this State and above referred to. In Indiana there is a statute similar to ours and it was there held, in *Hartman* v. *Lee* (30 Ind. 281) that a warranty deed by a tenant by the curtesy did not bind the heirs and that the remedy of the grantee was for damages for breach of the covenant.

We are of the opinion that the plaintiff is not, by reason of the warranty deed to defendant, estopped from asserting his rights. It is hardly claimed that the defendant is in a position in this action to get the benefit of the statutory provisions making heirs and devisees liable for the debts of the decedent. (Code, § 1843 *et seq.; Selover* v. *Coe*, 63 N. Y. 438.) Such action must be against all the heirs (§ 1846), and certain conditions must exist (§ 1848) which are not shown here, and the amount recoverable depends on the amount of the assets, and other claims are to be taken into account.

It follows that the nonsuit was improperly granted.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment and order reversed and a new trial ordered, with costs to abide the event.