## WYMAN, PARTRIDGE & CO. v. TIERNEY, ET AL.
(No. 1642; Dec. 30, 1930; 294 Pac. 781)

322

For the appellant there was a brief and oral argument by *Lin I. Noble,* of Thermopolis.

For the respondents, Lindsey and Brookins, there was a brief and oral argument by *C. H. Harkins,* of Worland.

RINER, Justice.

The direct appeal in this case is prosecuted from a judgment of the District Court of Washakie County, in favor of the respondents Lindsey & Brookins, a copartnership. Judgment was given below against D. J. Tierney in favor of Wyman, Partridge & Company, the appellant here, but he is not represented in these review proceedings.

The facts out of which this litigation grew, as disclosed by the record, and which are very little in dispute, are briefly these: On April 20, 1926, in the town of Worland, Wyoming, one D. J. Tierney was engaged in carrying on a retail store, dealing in sundry merchandise. Subsequent to October 28, 1925, he had purchased various bills of goods from Wyman, Partridge & Company, and on or about the date first above mentioned he owed that company $992.47. During some four weeks preceding April 20, 1926, Tierney had conducted a special sale in his store in the ordinary course of business, but on that day, however, he arranged to sell his entire remaining stock of merchandise and fixtures to the copartnership of Lindsey & Brookins. In fact, the following day he executed a bill of sale to them as agreed.

Before the sale was consummated and on April 20th aforesaid, Tierney prepared a detailed inventory of the merchandise included in the proposed sale, showing the items thereof and the cost price to him. Mr. Brookins, representing the copartnership, at that time asked Tierney for a list of his creditors and the latter replied that he had none except the bank, which had a mortgage on the fixtures. Brookins then investigated Tierney's books and found his accounts thereon to be all closed and paid. He also inquired at each of the banks in the town of Worland, with one of which Tierney had dealt, as to Tierney's owing any indebtedness to them, and was told that there was none except the mortgage on the fixtures already mentioned. Brookins made further inquiries about town and learned also

that Tierney's personal bills had all been paid. Brookins then assumed and paid to the bank the amount due on the chattel mortgage held by it on the fixtures purchased, the chattel mortgage being then assigned by the bank to Lindsey & Brookins and the assignment duly filed on April 28, 1926 with the county clerk of Washakie county. Brookins also gave Tierney a postdated check—dated April 26, 1926 —for the balance of the purchase price of the merchandise, this amount being $900. Before that date arrived and the check could be cashed, Lindsey & Brookins were, on April 22, 1926, served with garnishee process in aid of execution on some twelve judgments, which, between the 26th of March and the 12th day of April, 1926, had been obtained by various creditors against Tierney in a local justice court. Brookins immediately stopped payment on the check aforesaid and on May 6, 1926, upon court order, paid the $900 for which it was drawn into the justice court, and the money was applied in satisfaction of the several judgments against Tierney. It appears that all the purchase money agreed to be paid for the entire property purchased went to pay off Tierney's creditors, and the latter got none of it. So far as appears by the record, the merchandise thus sold to Lindsey & Brookins was not worth any more than the $900 agreed to be paid for it. The copartnership thereafter sold the property thus purchased by them.

Wyman, Partridge & Company were not notified by Lindsey & Brookins of the sale of the property had as above described and were not one of the creditors who had obtained judgments in the justice court. On May 5, 1926, that company filed its petition in the District Court of Washakie County, upon its claim for goods sold to Tierney, and thereby sought to have Lindsey & Brookins declared a receiver of all of the property the copartnership had purchased from Tierney, to be held in trust for Wyman, Partridge & Company, it being alleged that the sale was, in certain specified particulars, in violation of the so called "Sale of Merchandise in Bulk" Act, W. C. S. §§ 4720,

4721 and 4722. The answer of Lindsey & Brookins, other than a general denial of the allegations of the petition, pleaded the making of the inventory, the various efforts of Lindsey & Brookins to learn of Tierney's creditors, and, finally, the payment into court by them of the amount of the purchase price of the merchandise, all as recited above. The reply filed by the plaintiff put in issue the affirmative allegations of the answer.

The case was tried to the court, with the result that a general finding was made in favor of Lindsey & Brookins, and judgment was given that Wyman, Partridge & Company recover nothing from them. Tierney not having pleaded, findings were made and judgment was entered against him.

For the appellant it is insisted that as the proofs submitted in the record here show that the parties to the sale of the Tierney stock of merchandise did not comply strictly with the provisions of Section 4720, W. C. S. 1920—the first section of the Sale of Merchandise in Bulk Act—the sale was, in consequence, absolutely void under the statute, and Lindsey & Brookins should be held, pursuant to the third section of the Act (W. C. S. 1920, Sec. 4722) as receiver of the goods to respond to its claim against Tierney. The contention of the respondents Lindsey & Brookins is, that the act in question is not so stringent as appellant claims, but inasmuch as they endeavored, in good faith, to comply with the Bulk Sales Law, and as in truth the sale was not fraudulent in fact, and, further, as they were obliged to pay all of the purchase price to Tierney's preferred creditors, respondents should be protected, as was decided by the trial court.

The law here to be considered was first passed by the Eleventh State Legislature in 1911, (Laws 1911, C 33) and provided, in outline, in its first section, that the sale in bulk of a stock of merchandise otherwise than in the ordinary course of trade on the part of the seller should "be void as against the creditors of the seller" unless (1) the latter

should, at least five days before the sale, make a detailed inventory showing the quantity and, as far as possible, the cost price to the seller of each article included in the sale, and, unless (2) the purchaser demand and receive from the seller a written list of the names and addresses of the seller's creditors, with the amount due each and certified by the seller under oath to be an accurate list of such creditors and indebtedness, and unless (3) the purchaser should, at least five days before taking possession of the property or paying therefor, notify personally or by registered mail every creditor whose name is on the list aforesaid, or of which he has knowledge, of the proposed sale and its terms. The second section of the act merely defined more clearly the operation of the law as regards the persons affected. The third section, generally speaking, provided that any purchaser who failed to obey the law should, upon application of any of the seller's creditors, "become a receiver and be held accountable to such creditors for all the goods" that have come into his possession by virtue of the sale, and that conformity to the law's requirements rendered the purchaser not in any way accountable to any creditor of the seller for any of the merchandise coming into the vendee's possession by virtue of such sale.

Section 1 of the Act was not permitted to stand long in its original form, for the ensuing legislature, in 1913, made a definite change in its phraseology. The language exactly quoted above in said section, "shall be void as against the creditors of the seller," was altered to read, "shall be presumed to be fraudulent and therefore void as to the creditors of such seller, * * * and shall be held to be *prima facie* void as to such creditors in any proper proceeding in any court of this state, unless" etc. The law has thus since remained.

In determining whether the statute, as it now stands, merely enacts a rule of evidence, throwing the burden of showing good faith on the purchaser, which burden can be sustained by any competent evidence sufficient to show that

the sale was not in fact fraudulent, or, is declaratory of a rule of substantive law, the nonobservance of which constitutes fraud in law, confining the evidence to a showing of compliance with the statutory requirements, we are materially aided by an examination of several cases from other jurisdictions where statutes of quite similar character have been changed and have been before the courts both before and after the change was made.

In Oklahoma, in 1903, the law provided that: "A sale of any portion of any stock of merchandise * * * will be presumed to be fraudulent and void as against the creditors of the seller unless" etc. And in Williams v. Fourth National Bank, 15 Okla. 447, 82 Pac. 496, (2 L. R. A. (N. S.) 344, 6 Ann. Cas. 970) and in Ellett-Kendall Shoe Company v. Ross, 28 Okla. 697, 115 Pac. 892, it was decided that this "statutory language did not render a sale made in violation of that statute conclusively fraudulent and void, but that the failure to comply with such statute only created a rebuttable presumption that such a sale was void," i. e. it merely established a rule of evidence. Thereafter the law was altered (Laws of Oklahoma 1907-8, page 557), so that it read: "The transfer of any portion of a stock of goods, wares and merchandise, otherwise than in the ordinary course of trade * * * shall be presumed to be fraudulent and void as against the creditors of such transferrer and such presumption may be rebutted only by a proposed transferee showing that" he complied with the several requirements of the law. Under this changed language it was held, in Galbraith v. Oklahoma State Bank, 36 Okla. 807, 130 Pac. 541, 543, decided October 23, 1912, that:

"The presumption of fraud arises whenever there is a sale in bulk. This presumption can only be rebutted by showing a compliance with the provisions of the act. The presumption is conclusive unless the provisions of the act are complied with. This is the plain meaning of the language used. As a failure to comply with the act raised the

conclusive presumption that the sale was fraudulent, no evidence of good faith was competent."

Again, in Wisconsin, the Bulk Sales Law, (Laws Wis. 1901, C. 463) at first provided that: "The sale of any portion of a stock of merchandise otherwise than in the ordinary course of trade * * * shall be presumed to be fraudulent and void as against the creditors of the seller, unless" etc. The law also contained a clause reading: "Except as expressly provided, nothing herein contained shall affect or change present rules of evidence or presumptions of law." In Fisher v. Hermann, 118 Wis. 424, 95 N. W. 392, it was held, under this statute, that the fraud presumed could be repelled by the bona fides of the transaction. Subsequently, the lawmaking body of that state passed an act (St. of Wis. 1917, 2317 C) declaring that such a sale "shall be conclusively presumed to be fraudulent and void, as against the then existing creditors of the seller" etc. And in Prokopovitz v. Kurowski, 170 Wis. 190, 174 N. W. 448, 449, the court said:

"It is evident that the amendment makes such a sale for want of conformity to the statute *conclusively* fraudulent and void as to the seller's creditors."

So in New York, the earlier law provided in substance that, the transfer of an entire stock of goods in trade, in bulk, should be presumed to be fraudulent and void, as against the creditors of the transferor, unless etc. In Wallach v. Baumryter, 170 App. Div. 618, 156 N. Y. Sup. 497, the Supreme Court, Appellate Division, five *judges sitting*, held that as against a claim that the notice required by the Bulk Sales Law (Personal Property Law [Consol. Laws N. Y. C. 41] Sec. 44) was not given, any presumption of a transfer in bulk of a stock in trade being fraudulent under such circumstances was overcome by proof of the transferor receiving full consideration, and this ruling was thereafter

affirmed by the New York Court of Appeals in Wallach v. Baumryter, et al., 224 N. Y. 652, 121 N. E. 896.

Then a change in the law was brought about so as to make it read that a sale of merchandise in bulk "shall be void as against the creditors of the seller," unless certain requirements were met by both vendor and vendee. Interpreting this statute, the court, in Mach v. Baum, 98 Misc. Rep. 607, 163 N. Y. Sup. 145, 147, said:

"It may be that the act in its present form was drawn upon the theory that, as fraudulent intent is difficult of proof, it were better that all sales be conclusively presumed to have been made in bad faith; but, whatever may have been the theory of the legislature, its mandate is clear that the sale, to be valid, must be accompanied by the performance on the part of the vendor and vendee of the prescribed conditions."

And in Caro v. Brachfeld, 163 N. Y. Sup. 511, following the ruling last mentioned, it was held that a purchase of goods in bulk, without obeying the law's requirements, did not pass title to a good faith purchaser who paid full value for the goods at the time of purchase. In the earlier case of Apex etc. Co. v. Litke, 173 App. Div. 323, 159 N. Y. Sup. 707, 709, it was said, with reference to the later Bulk Sales Act, that:

"The transfers therein specified are made void as against the creditors of the seller, unless such creditors' names are included in the inventory and a notice be given to such creditors of such sale."

This decision was subsequently affirmed by the Court of Appeals (Apex Leasing Co. v. Litke, et al., 225 N. Y. 625, 121 N. E. 853).

Recurring now to the legislative history of the law involved in the instant case, as described above, it is difficult, as it seems to us, not to reach the conclusion that it was the intention of the framers of this legislation to accom-

plish a result exactly the reverse of what was attained in the states of Oklahoma, Wisconsin and New York in the instances cited above. Our 1911 law on the subject, declaring that bulk sales "shall be void as against the creditors of the seller, transferor, or assignor, unless" etc., clearly, under the authorities cited above, is to be classed with the more stringent type of statute—the final form of the legislation in the several states previously mentioned and doubtless should be given a like interpretation. The law of 1913, deliberately modifying the severe language of the earlier statute and enacting that such transactions "shall be presumed to be fraudulent and therefore void as to the creditors of such seller, transferor, or assignor, and shall be held to be *prima facie* void as to such creditors in any proper proceeding in any court of this state, unless" etc., obviously exemplifies the early type of legislation in the states aforesaid and should be regarded by this court accordingly. If, as argued by appellant, the same severe effect is to be given the later law as the plain language of the earlier act would appear to require, the consequence would, of course, be to hold that the 1913 legislature changed the phraseology of the first section of the 1911 act, put it through the legal forms of lawmaking, including the executive approval thereof, all for no purpose whatsoever. We do not think we are permitted to take such a view of the matter.

It is true that under a statute phrased somewhat like Section 4720, supra, now reads, it has been held in some few jurisdictions, notably Mississippi—see Moore Dry Goods Co. v. Rowe, 97 Miss. 775, 53 So. 626—that a rule of substantive law is declared. But an examination of the cases will, we think, disclose that such language has generally been held to create a rule of evidence—a rebuttable presumption capable of being overcome by evidence of good faith in fact. See 27 C. J. 876 and cases cited in the notes. Further, no instance has been drawn to our attention where the legislature has made such a significant change of statutory language in the manner as appears here, and, despite

that fact the courts have still held to the more severe rule. Inasmuch as there was in the record substantial evidence of good faith on the part of the respondents Lindsey & Brookins concerning the transaction in question, which would support the general finding of the trial court, in our view of the law as it now stands, this would of itself be sufficient to conclude the case.

But there is another reason why our disposition of this cause presently to be announced, is sound. It will be recalled that before the appellant began this action in the District Court of Washakie County, various creditors of Tierney had obtained judgments against him in the justice court, and Lindsey & Brookins, after the sale and before the purchase money had been paid over to Tierney, had been served with garnishee process in aid of execution on these judgments. By that process such creditors had obtained a prior claim, frequently described as a lien—garnishment in its effect giving the plaintiff a specific right over and above mere general creditors to the indebtedness of the garnishee to the defendant for the payment of plaintiff's claim, and being analogous to that acquired by attachment of tangible property—to any property, money or credits belonging to Tierney in the hands of Lindsey & Brookins. North Star etc. Co. v. Ladd, 32 Minn. 381, 383, 20 N. W. 334; 28 C. J. 252-3. All of the purchase price or equivalent of the value of the property transferred to Lindsey & Brookins—however it be regarded—was by them, under order, paid into court and applied to the satisfaction of the judgments aforesaid. It has been repeatedly held on good authority and reason, that when a conveyance of property has been avoided by creditors of the grantor, it may be upheld in favor of a grantee, free from actual fraud to the extent of the actual consideration paid, and he may be subrogated to the rights of the holders of liens whose incumbrances he had paid. See La Salle Supply House v. La Salle Amusement Co., 289 Ill. 194, 124 N. E. 454; Adams v. Young, 200 Mass. 588, 85 N. E. 942; Carnall v. Kramer,

194 Iowa 359, 189 N. W. 755; Smith v. Boyer, 119 So. Car. 176, 112 S. E. 71, 41 A. L. R. 1466; Loos v. Wilkinson, 113 N. Y. 485, 21 N. E. 392, 4 L. R. A. 353, 10 Am. St. Rep. 495, and cases cited; Hicks v. Beals, 83 Ore. 82, 163 Pac. 83, L. R. A. 1917D 1067.

Even if we were to adopt the extreme construction of Section 4720, supra, contended for by appellant, we are unable to perceive how the latter could succeed on this record. We are inclined to the view that the authorities last above cited are on principle applicable to the facts shown and recited above. Lindsey & Brookins, even under appellant's argument, were not guilty of actual fraud—indeed a contrary conclusion would be repelled by the finding of the trial court and the record itself—but only of a fraud in law for failure to obey the requirements of Section 4720. The creditors who held the several judgments by garnishee process had obtained a prior right, claim or lien to any property or money belonging to Tierney in the hands of Lindsey & Brookins. This right was superior to any right at that time held by appellant, which then was only a general creditor. Lindsey & Brookins were, perforce, obliged to pay off the claim of the judgment creditors thus secured by turning over to them all of the value of the property, or its equivalent sale price, which Lindsey & Brookins had. We can see no good reason why the copartnership should not be subrogated to the prior right of these creditors which it satisfied and in consequence be fully protected. It seems to us it would be harsh in the extreme to compel Lindsey & Brookins, under such circumstances, to respond to appellant's claim either in whole or in part. In Anthony Wholesale Grocery Co. v. Otto Weiss Milling Co., 116 Kans. 534, 227 Pac. 374, a situation was presented resembling somewhat that existing at bar, but with this important difference, that while the creditor there brought its suit in the justice court, it did not, as here, obtain a prior right by attachment or garnishment. In consequence it was obliged to share pro rata with the other creditors in the property

embraced in the sale, which sale had been in violation of the Bulk Sales Act. The clear inference from the opinion is, however, that had such process been invoked, a prior right would have been obtained by the justice-court plaintiff over other creditors.

Our conclusion, accordingly, is, that the judgment of the District Court should be affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.