GENERAL CREDIT CORPORATION, Appellant, *v.* JOHN KAPUN, Respondent.

Second Department, February 10, 1933.

*Robert I. Rogin* [*Samuel R. Rudey* with him on the brief], for the appellant.

*Harry J. Laragh*, for the respondent.

CARSWELL, J.   Lowa Sales & Service, Inc., an automobile dealer of Yonkers, N. Y., on October 10, 1931, made a pretended sale of an Auburn car to one Ottenberg.   He was a mechanic working for the dealer.   It had Ottenberg execute a conditional sale agreement, which the dealer signed, containing a declaration that the seller had delivered a 1931 used car.   The serial number given was 8–98–A 16053; the motor number 8339.   Opposite Ottenberg's signature was this statement: " Buyer do not sign unless you have actually received Motor Vehicle, since by doing so you might place yourself in the position of being a party to a fraud."

Ottenberg also signed an instrument or note which obligated him to pay the dealer $768 in twelve monthly installments of $64 each.   The total consideration was $1,280, covered by a purported payment of $400 cash on the delivery of car; an allowance of $200 on the trade in of a Whippet car; the unpaid balance of $680 to be liquidated by the indicated payments totaling $768.   The dealer also had Ottenberg furnish a " Buyer's Statement " in which he disclosed that he was a mechanic working for the dealer.

On this same day, October 10, 1931, the dealer assigned and delivered this conditional sale agreement, note and buyer's statement (the agreement indicating that title to the car was retained by the dealer) to the plaintiff, General Credit Corporation.   The dealer received therefor from plaintiff $680.

The conditional sale agreement, with the unacknowledged assignment thereof to the plaintiff on the back, executed October 10, 1931, by the dealer, was not recorded in the clerk's office of the city of Yonkers or anywhere else.

Ottenberg says that he engaged in this transaction as a favor to the dealer; that the car was on the floor of the dealer when the transaction took place; that he never inspected it; that it never was delivered to him and that he never had possession of the car.

A few days before October 20, 1931, the defendant, Kapun, examined the car and negotiated with the dealer. The car was at that time on the dealer's floor. Kapun agreed to buy it, but did not go through with the deal until October 20, 1931, at which time the car still continued on the dealer's floor. Kapun paid $750 cash, traded in a Flint car on a credit of $625, which made the purchase price of the Auburn car $1,375. The serial number in his instrument covering the deal was given as 8–98–A–16053–B. This differs from the serial number given by the plaintiff in that there is a capital " B " after the number. This document gives the motor number as 48539. The motor number in the conditional sale agreement is 8339. Both papers describe the car as an Auburn Brougham Model 8–98–A–1931 year and model. Before defendant Kapun bought the car he examined the records to ascertain if there were any chattel mortgages or sales agreements on file involving the car, and he found none.

Kapun took delivery of the car and used it. Meanwhile payments on the pretended sale to Ottenberg were made to plaintiff, covering the November, December and January payments. It seems that the dealer made its check, or the check of Lowa individually, payable to Ottenberg and he in turn indorsed each check over to the plaintiff. The payment due February 10, 1932, and the others subsequent thereto, totaling $576, were not paid.

When the February 10, 1932, payment was not made to the plaintiff credit corporation, it located an Auburn car in defendant's possession, with the slight discrepancy in numbers indicated, and had a seizure made under an order of replevin on April 1, 1932.

The defendant in his answer in this replevin action set up a counterclaim asserting that he was the owner of the automobile and seeking damages for the retention of it by the plaintiff.

The trial court found with the defendant; adjudged that he was entitled to possession of the car and awarded him, upon adequate evidence, damages at the rate of five dollars a day for the loss of use of the car.

Plaintiff asserts that when the dealer assigned the conditional sale agreement and note to it on October 10, 1931, the dealer divested itself of all title to the car (which title it retained under the conditional sale agreement with Ottenberg), and that, therefore, the dealer was incapable of giving title to the defendant Kapun when it, the dealer, sold him the Auburn car on October

20, 1931. This view is predicated on the assumption that the transaction between the dealer and Ottenberg had the legal effect it might have if it were genuine, and that the plaintiff was under no duty or burden to safeguard itself against a fraudulent or pretended sale or to do other than print the warning quoted above to the buyer not to sign the conditional sale unless the buyer had in fact received delivery of the motor vehicle.

When plaintiff received the conditional bill of sale and made no independent inquiry to ascertain whether an actual change of possession of the car had taken place, it took the risk that the instrument represented a genuine transaction. It must carry the burden of that risk if the rights of third parties become involved therein, by reason of a change of possession of the car not in fact transpiring. As to defendant, the dealer had not in fact made any sale to Ottenberg and was in the position of one in possession of a chattel with full power to pass title thereto. This consequence flows from the fact that the possession of the dealer from the very outset — from the initial acquiring of that possession — was never disturbed, and that fact made plaintiff's rights subordinate to the rights of the defendant Kapun. The failure of the plaintiff to record the conditional sale instrument, even though not required to do so under the statute, so far as the defendant Kapun was concerned, further obstructed giving effect to the pretended sale upon which plaintiff relies. Plaintiff thus increased the risk it took in its misplaced reliance upon the genuineness of the transaction between the dealer and Ottenberg, which could only be effective, as to defendant, to accomplish a transfer of title under the conditional sale agreement and assignment thereof if an actual change in possession or a delivery of the car occurred.

This consequence from the lack of actual change of possession of the car under the pretended sale to Ottenberg and the assignment of the instruments to plaintiff, flows from the effect of section 106 of the Personal Property Law. That provision applies to all sales, including conditional sales, and represents a broadening of the statute as it formerly existed. (McKinney Consol. Laws, book 40, note, p. 184.) That section, so far as pertinent, reads:

" § 106. Sale by seller in possession of goods already sold. Where a person having sold goods continues in possession of the goods, * * * the delivery * * * by that person * * * of the goods * * * to any person receiving and paying value for the same in good faith and without notice of the previous sale, shall have the same effect as if the person making the delivery * * * were expressly authorized by the owner of the goods to make the same."

The foregoing language was given the same effect as is being

given herein in *Tripp* v. *National Shawmut Bank* (263 Mass. 505). There a situation corresponding to the one herein was involved. It had an element not present herein, to wit, that the bank knew of the manner in which the dealer did business, which manner involved a continued possession of the car, such as occurred herein, after the making of a nominal conditional sale. The court, however, did not rely upon that element as the controlling one. It relied upon the element of undisturbed possession from the time the nominal or pretended conditional sale was made until the actual sale, or seeming second sale, was made, to sustain the propriety of protecting the actual buyer or seeming second buyer. It was on that very ground (263 Mass. 505, 512, 513) that the court distinguished *Lynn Morris Plan Co.* v. *Gordon* (251 Mass. 323), upon which plaintiff relies herein.

There is no case in point in this State. We follow the doctrine of the *Tripp* case. It has the support of the great weight of authority in this country. (*Halliwell* v. *Trans-States Finance Corp.*, 98 N. J. L. 133; *Gump Investment Co.* v. *Jackson*, 142 Va. 190; *L. A. W. Acceptance Corp.* v. *Chernick*, 49 R. I. 434; *Commercial Credit Co., Inc.*, v. *Parker*, 101 Fla. 928; *Flynn* v. *Garford M. T. Co.*, 149 Wash. 264; *Northwestern Finance Co.* v. *Russell*, 161 id. 389.) A similar result has eventuated in kindred situations. (*Kearby* v. *Western States Secur. Co.*, 31 Ariz. 104; *Smith* v. *Kirkpatrick Finance Co.*, 181 Ark. 1031; *Buchanan* v. *Com. Investment Trust*, 177 id. 579; *Carter* v. *Rowley*, 59 Cal. App. 486; *General Secur. Corp.* v. *Reo Motor Car Co.*, 91 id. 16; *Anchor C. M. Co.* v. *Pennsylvania B. & T. Co.*, 292 Penn. St. 86.)

The judgment should be affirmed, with costs.

Present — LAZANSKY, P. J., KAPPER, CARSWELL, SCUDDER and DAVIS, JJ.

Judgment of the City Court of Yonkers unanimously affirmed, with costs.