No. 16,260.

STANDARD MOTOR CO. *v.* AMERICAN LOAN SYSTEM, INC.
(209 P. [2d] 264)

Decided July 11, 1949.   Rehearing denied August 23, 1949.

Mr. JACKSON M. SEAWELL, for plaintiff in error.

Mr. L. A. HELLERSTEIN, Mr. WAYNE D. CALDERWOOD, for defendant in error.

*En Banc.*

MR. JUSTICE HAYS delivered the opinion of the court.

THIS is a controversy concerning the title to a 1942 Dodge two-door sedan automobile. The essential facts, not disputed, are in substance that: The Standard Motor Company, a Colorado corporation, being then the owner of said automobile, placed it for storage purposes only upon a used car lot operated by one Louis Lewin, and publicly known as "Don Lou Motor Sales," with instructions to segregate it from other cars exhibited for sale upon said lot. Thereafter, a chattel mortgage upon said automobile and others not here involved, was purportedly executed to secure the payment of a note, said mortgage and note being signed, "Don Lou Motor Sales" "Lewis Lewin," and reciting that "Don Lou Motor Sales" was the owner of said automobile, and "that he is lawfully possessed" of the same, free and clear of encumbrances. The mortgage also contained the customary recitals as to warranty of title.

After default in the payment of the note secured by said mortgage, the automobile was repossessed by the alleged mortgagee and placed upon another used car lot operated by defendant Herbert Hendrickson, for sale, where it was discovered by the owner, The Standard Motor Company, and this replevin action, wherein Hend-

rickson was the only named defendant, followed: Thereafter the American Loan System, Inc., intervened and claimed title to the automobile by reason of the foreclosure of its mortgage, and it is the only party here resisting plaintiff's claims. The judgment of the trial court was rendered in favor of intervener, and plaintiff seeks reversal.

Two questions are presented: (1) Is the mortgage of defendant in error valid? (2) If not, is plaintiff in error estopped from asserting its invalidity?

██ ██ The first question must be answered in the negative. The transaction here considered constitutes a bailment, and: "It is elementary that, in the absence of special legislation, one who deals with a bailee concerning bailed property does so at his peril. He is charged with notice of ownership." *Clay, Robinson & Co. v. Atencio,* 74 Colo. 17, 218 Pac. 906. The transaction "is a simple case of one man mortgaging another's property, and since the bank was not protected by any statute it took nothing, as against Matteson [the owner] by its mortgage." *First National Bank v. Matteson,* 106 Colo. 233, 103 P. (2d) 487.

We conclude that the title of plaintiff in error to said automobile is unaffected by unauthorized attempts of the bailee herein to encumber the same.

Defendant in error contends, however, that assuming the mortgage to be void, plaintiff is estopped from raising the question of validity or objecting to its introduction in evidence because, as said, the plaintiff by placing the automobile upon the morgagor's lot in the possession of mortgagor, the latter was thereby clothed with "indicia of ownership" upon which the intervener, without further investigation, had a right to rely in making the loan and accepting the mortgage as security therefor.

██ "Indicia of ownership" as used above, has been held to be synonymous with "circumstantial evidence" and denotes facts which give rise to inferences. *Graham Ice Cream Co. v. Petros,* 127 Neb. 172, 254 N. W. 869.

Thus considered, the contention of the intervener restated, is: That the mortgagor having possession of said automobile furnishes circumstantial evidence that he was its owner with full right to sell or mortgage same; that said possession in and of itself created such inference of ownership; and that the intervener was under no obligation to inquire concerning the official certificate of title or make further investigation with reference thereto.

■ The posed question has been determined by us adversely to the contention of defendant in error, in *Clay, Robinson & Co. v. Martinez,* 74 Colo. 10, 218 Pac. 903, from which we quote: "It is argued by plaintiff in error that since the plaintiffs put Jordan in the ostensible position of owner, they are estopped to deny his ownership. The answer is that they put him in the position of bailee, not owner. Control, apparently as owner by reason of possession, is an incident of every bailment, yet everyone deals with a bailee at his peril. 3 R.C.L. 142 to 145, §§66 and 67. See *Schraeder v. Mitchell,* 73 Colo. 320, 215 Pac. 147, decided at the present term. *No indicium of ownership was conferred in the present case except possession.*" (Emphasis supplied)

Again in *Bank v. Simmons,* 91 Colo. 160, 13 P. (2d) 259, in dealing with the same subject we said: "In *Clay, Robinson & Co. v. Martinez,* 74 Colo. 10, 218 Pac. 903, we held that the owner of bailed property is not estopped to deny the ownership of the bailee because he permits the latter to enter into contracts with third parties concerning the same. We also held in that case that everyone deals with a bailee at his peril and, in the absence of special legislation to the contrary, one who deals with the bailee concerning the bailed property not only does so at his peril, but is charged with notice of its real ownership."

An estoppel was likewise considered under similar

circumstances in the later case of *Illinois Building Co. v. Patterson,* 91 Colo. 391, 15 P. (2d) 699, wherein the late Justice Butler observed in his dissenting opinion after referring to *Clay, Robinson & Co. v. Martinez, supra:*

" 'Possession under a conditional sale, with the right of the vendee to use the property as his own, does not clothe the latter with such indicia of ownership as to estop the owner from asserting title as against a bona fide purchaser from the conditional vendee. Sanders v. Keber, 28 Ohio St. 630. The court says that the converse of this rule would place goods and chattels on the same ground as commercial paper before due, instead of requiring the buyer to rely on the implied warranty of title by the vendor.' 25 L.R.A. (N. S.), 772, note. And see *Simpson v. Shackelford,* 49 Ark. 63, 4 S. W. 165. See also cases collected in note, 25 L.R.A. (N. S.), 770 et seq. Such is the law, even where contracts are made or money is paid or loaned on the strength of ostensible ownership by virtue of possession. Much less can estoppel be relied upon in the present case, for the lease was given before the furniture was in the office room, or otherwise in the Bond and Mortgage Company's possession; and there is no pretense, and there could be none, that the lease was given in reliance upon ostensible ownership of this furniture by the Bond and Mortgage Company.

"Again, the Bond and Mortgage Company could not transfer to the Building Company, or encumber, a title that it did not have. In the purchase of personal property the rule of caveat emptor ordinarily applies. Thus, a lessee of chattels cannot, as against the lessor, pass title by sale thereof even to a bona fide purchaser without notice of the lessor's title."

The above is in accordance with the general rule which is clearly stated in 8 C.J.S., p. 315, as follows: "* * * the bailor may recover possession of the subject

matter of the bailment, or its value, from any person who has acquired possession by a wrongful act of the bailee, such as a sale, mortgage, pledge, or other transfer; and this right of the bailor may be enforced even against one who purchases from the bailee in good faith and without notice of the bailor's title, the principle being that the bailee cannot transfer a greater right or a better title than he himself possesses, and that a person purchasing property from a stranger does so at his peril."

Furthermore, article 1, chapter 16, '35 C.S.A., as amended (S. L. '45, ch. 77; S. L. '47, p. 272, §5), relating to the registration of automobiles and the protection of titles, was adopted for the very purpose of "more accuracy in, and security of, titles to motor vehicles, as between parties dealing therein." *Daniel v. Surratt,* 97 Colo. 43, 46 P. (2d) 903. It obviously was passed for the protection of those like the intervener, who make loans on automobiles, and to obviate the necessity of relying upon circumstantial evidence as to the ownership thereof. The law provides for the issuance of an official certificate of title and sets up a tribunal by which uncertainties concerning ownership of automobiles may be officially determined.

█ Under the admitted facts in this case the plaintiff did everything in its power to protect intervener and others who might be foolish enough to loan money on the flimsy circumstantial evidence here relied on by refusing to turn over the official certificate of title to mortgagor when the automobile was placed on the lot. If the mortgagee here had made inquiry of Lewin, with whom it dealt, to exhibit the certificate of title, as evidence of his right to execute the mortgage, he could not have done so and the mortgagee would thus have been saved the embarrassment in which it now finds itself. The intervener should not be permitted, through the use of the equitable doctrine of estoppel, to cover up its own neglect in refusing to avail itself of the laws

enacted for its protection, and thereby divest plaintiff, which is without blame, of its property.

The judgment of the trial court is reversed, and cause remanded with instructions to enter judgment for plaintiff in harmony herewith.