**CHEYENNE NATIONAL BANK, a corporation, Appellant (Defendant below),**

**v.**

**CITIZENS SAVINGS BANK, a corporation, Appellee (Plaintiff below).**

**No. 3209.**

Supreme Court of Wyoming.

May 7, 1964.

Walter B. Phelan, of Guy, Phelan, White & Mulvaney, Cheyenne, for appellant.

David D. Uchner, of Henderson, Godfrey & Kline, Cheyenne, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

We have been asked to resolve a controversy between two banks with respect to the priority of their respective liens on identical motor vehicles. Action was brought under the provisions of the Uniform Declaratory Judgment Act, §§ 1–1049 to 1–1064, W.S.1957. There is no material dispute as to the facts and the question involved is primarily one of law.

Parties agree that H. B. Bryan, as an accommodation maker and without having any interest, ownership or possession whatsoever, executed and gave to Jack O'Dell, the true owner and holder of two Mack dump trucks, a note and purported chattel mortgage in the amount of $28,000 covering such trucks. On the same day, March 27, 1961, O'Dell who actually owned the vehicles assigned the note and mortgage to Cheyenne National Bank, defendant. Within five days this purported mortgage and the assignment thereof were filed in the office of the County Clerk of Laramie County. No endorsement of the encumbrance thus held by Cheyenne National Bank was placed on the certificates of title for the trucks involved.

O'Dell caused payments to be made on the assigned note for several months. Then, on October 27, 1961, about seven months after making the assignment to defendant-bank, O'Dell borrowed $25,000 from Citizens Savings Bank, plaintiff, at Denver. As security therefor he gave a chattel mortgage covering the same two

trucks which were described in the mortgage instrument previously assigned by him to the Cheyenne bank.

Before paying the proceeds of its loan over to O'Dell, the Denver bank caused its mortgage to be filed in the office of the County Clerk of Laramie County, Wyoming, and caused the lien to be endorsed on the respective certificates of title for each of the trucks. The certificates of title were then held by the Denver bank. No other liens had been endorsed thereon.

The district court held the October 27, 1961 mortgage held by Citizens Savings Bank to be a first and prior lien and superior to that of Cheyenne National Bank. Judgment was rendered accordingly and the defendant-bank of Cheyenne has appealed.

Section 31–37(f), W.S.1957, which was in effect when appellant took its assignment from O'Dell, provided that the owner of a motor vehicle who had a certificate of title and who encumbered the vehicle should deliver the certificate to the holder of such encumbrance. Within five days the lienholder was required to file or record his lien in the office of the county clerk and to "concurrently" deliver the certificate of title to the county clerk. The clerk was required in such a case to endorse a notation of the lien on the certificate of title.

Counsel for appellant offers no excuse for the failure of the Cheyenne bank to comply with this provision. He argues instead that it makes no difference because the law did not at the time in question provide that the encumbrance must be noted on the certificate of title, in order "to put a buyer on notice of such encumbrance."

We do not consider the argument of counsel tenable for these reasons: (1) The recording or filing of an instrument never constitutes constructive notice unless the statutes pertaining to recording and filing are complied with; and (2) although the purported mortgage given by Bryan (without ownership or possession) may

have been good as between the parties to that transaction and all persons having knowledge of such transaction, it was not binding on bona fide purchasers and encumbrancers.

### Constructive Notice

There is no contention that Citizens Savings had actual knowledge of the lien claimed by Cheyenne National. We are therefore concerned only with the question as to whether it had constructive notice by reason of the filing of the Bryan mortgage.

At the time the Bryan instrument and assignment were filed, which was within five days after their execution, Cheyenne National was the only party which could possibly claim to be a lienholder. The law then in effect (§ 31–37(f)) required the holder of an encumbrance to file or record such encumbrance within five days. There was also a further provision requiring that the lienholder "shall concurrently" deliver the certificate of title to the county clerk, who then had the duty to endorse on the face of the certificate appropriate notations concerning the encumbrance.

We have previously held constructive notice by recording to be a matter entirely dependent upon statute. Torgeson v. Connelly, Wyo., 348 P.2d 63, 66; Dame v. Mileski, 80 Wyo. 156, 340 P.2d 205, 208. Therefore, when appellant's counsel argues that filing of the Bryan mortgage constituted constructive notice because the law *failed* to provide the encumbrance must be noted on the certificate of title to put a buyer on notice, he has his logic in reverse.

It is compliance with recording and filing statutes which causes constructive notice to be effective and not a statutory declaration of that legal effect. The controlling statute at times pertinent to this case provided for *concurrent* delivery of the certificate of title when a chattel mortgage on a motor vehicle is filed, and appellant failed to comply with that requirement. As we pointed out in the Torgeson case and in Thomas v. Roth, Wyo., 386 P.2d 926, 930,

the legislature makes the laws pertaining to recording, and constructive notice flows therefrom. There can then be no constructive notice by recording until the recording statutes are fully complied with.

A very good reason for this rule is apparent in the instant case. We know of no statutory provision for the giving of a chattel mortgage by one other than the owner or holder of personal property. Section 34–242, W.S.1957, as it existed at the time of the transactions here involved, provided that it was lawful for a person to mortgage personal property "owned, occupied or in possession" of the mortgagor. Section 34–249, W.S.1957, further provided (in 1961) that upon the filing or recording of such a mortgage it should be indexed in the chattel mortgage index, with the name of the mortgagor being entered.

■ Inasmuch as Bryan was not the owner and was not in possession of the property, nothing but a fraudulent and fictitious name could be entered as mortgagor. Thus the purpose, or at least one of the purposes, of filing with the county clerk was defeated. As expressed in Hawkins v. Stoffers, 40 Wyo. 226, 276 P. 452, 278 P. 76, 77, the design of the recording laws is to prevent fraud in transactions, and such laws should not be construed so as to produce fraud, but so as to prevent it.

In Thomas v. Roth, supra, at 386 P.2d 930, we reviewed the fact that Chief Justice Parker in Torgeson v. Connelly, supra, at 348 P.2d 67, had held on good authority to the effect that if acknowledgment is required before an instrument is recordable, then recordation without an acknowledgment does not afford constructive notice of the existence and contents of the instrument. It is just as reasonable and proper to say that when concurrent delivery of the certificate of title to a motor vehicle, for appropriate notation thereon, is required in connection with the filing or recording of a chattel mortgage on such vehicle, then a filing without such delivery would not afford constructive notice of the mortgage.

## Validity of Mortgage

Appellant seems to suggest that, even if Bryan was not the owner of the two trucks in question, such fact would not render his mortgage and the assignment thereof invalid. There is, of course, authority for the statement made in 14 C.J.S. Chattel Mortgages § 23, pp. 615–616, which is cited by appellant, to the effect that such a mortgage, if made with the consent of the true owner, may be valid "as between the parties and as against all persons having knowledge of the transaction." However, the Citizens Savings Bank was not a party to the transaction and it had no knowledge thereof.

Thus, the rule stated at 14 C.J.S., supra, p. 614, is wholly applicable. It is to the effect that a chattel mortgagor can convey by mortgage only that interest which he possesses in property, and ordinarily a mortgagor cannot give a valid mortgage on property which he does not own or in which he possesses no interest. See Butin v. Rothman, 135 Colo. 477, 312 P.2d 783, 784; Standard Motor Co. v. American Loan System, Inc., 120 Colo. 311, 209 P.2d 264, 265; Hale v. Fornea, La.App., 79 So. 2d 124, 126; Stanley v. Ellis, 77 Ga.App. 12, 47 S.E.2d 776, 778.

■ For purposes of our case it is sufficient to say that a mortgage on property which the mortgagor does not own or in which he possesses no interest is not valid as against a bona fide purchaser or encumbrancer for value, irrespective of which transaction is prior in time. See Bank of Kennett v. Clayton, 241 Mo.App. 487, 245 S.W.2d 678, 683; Wasatch Livestock Loan Co. v. Lewis & Sharp, 84 Utah 347, 35 P.2d 835, 841–842; and 14 C.J.S. Chattel Mortgages § 294, p. 932.

■ It being clear in the instant case that Bryan did not own and did not have possession of the vehicles which he purported to mortgage, and additionally that Cheyenne National Bank did not comply with the statutory requirement of delivering the certificates of title to the county

clerk for appropriate notations thereon, we are compelled to hold that plaintiff became a bona fide encumbrancer for value with neither actual nor constructive notice of a prior lien. The mortgage held by defendant-Cheyenne National was therefore invalid as to such bona fide encumbrancer, and the judgment of the district court was proper.

Affirmed.

Mr. Chief Justice PARKER, concurring.

I concur with the result in this case upon the sole ground that a purported mortgagor cannot give a mortgage which would be valid as to third parties on property which he does not own or in which he possesses no interest.

Mr. Justice GRAY, concurring.

I concur in the result. Inasmuch as subsequent legislation now specifically prescribes a special mode of procedure for perfecting liens on motor vehicles, little would seem to be gained by expressing my views in the matter before us. However, I am not in accord with the pronouncements of the opinion concerning the matter of constructive notice to appellee; and because of the possibility that other claims under the former statutes might be affected, I desire briefly to comment upon the circumstances of this case.

At the time the mortgages of appellant were filed, §§ 34–247 and 34–248, W.S. 1957, relating generally to the perfecting of chattel mortgage liens, were in full force and effect. Under § 34–248 a mortgage in proper form when filed with the county clerk would "take effect and be in force from and after the time of delivering the same to the clerk for filing and not before, as to all creditors and subsequent purchasers, and mortgagees in good faith for valuable consideration and without notice * * *." Whether we say a mortgage so filed constitutes constructive notice or voids the lien of subsequent mortgagees is of little significance. The results are the same. Here the mortgages of appellant were in proper form and were entitled to be

filed and were so filed. The burden was on appellee to show that its subsequent mortgages were entitled to protection under the statutes. C. I. T. Corporation v. Francis, 54 Wyo. 421, 93 P.2d 507, 508. The opinion of Justice McIntyre holds that this burden was met when appellee proved that the lien of appellant's mortgage was not shown on the certificates of title.

My disagreement with such a holding is twofold. First, it is contrary to a previous holding of this court in Barber v. Reina Nash Motor Co., 72 Wyo. 65, 260 P.2d 928. It was there held that a late filed chattel mortgage covering a motor vehicle would be enforced from the date of filing against subsequent lien creditors, among others, even though the encumbrance was not noted on the certificate of title at the time the mortgage was filed. Secondly, the construction that the plain provisions of perfecting a chattel mortgage lien on chattels generally under § 34–248 were not effective and self-sufficient in the event the chattel was a motor vehicle is unwarranted in my opinion. Fogle v. General Credit, 74 App.D.C. 208, 122 F.2d 45, 49, 136 A.L.R. 814, and Merchants Rating & Adjusting Co. v. Skaug, 4 Wash.2d 46, 102 P.2d 227, 229. Section 31–37(f), W.S.1957, or any other provision of the Title Certificate Act did not so state. I would agree that in the year 1960 it might well have been advanced that the legislature intended § 31–37(f) to supersede § 34–248 in this respect, but that construction no longer seems tenable. Section 31–37(f) has since been repealed by Ch. 185, Session Laws of Wyoming, 1963, and although all of the former provisions of § 31–37(f) were substantially re-enacted, it is significant to note that those provisions have been augmented by the following important language:

"Section 2. That Section 9–302(4) Chapter 219, Session Laws of Wyoming, 1961, be amended and re-enacted as follows:

"(4) Two steps are required for perfection of a security interest in a motor vehicle required to be licensed.

"(a) A financing statement or security agreement must be filed in the office of the county clerk of the county in which said vehicle is located; and

"(b) A notation of the security interest must be endorsed on the certificate of title to such motor vehicle, such endorsement to be made concurrently with the filing of the financing statement or security agreement.

" * * * Every financing statement or security agreement when filed pursuant to the provisions of the herein Section 9–302(4) shall take effect and be in force from and after the time of filing and not before, as to all creditors, subsequent purchasers, and holders of security interest in good faith for valuable consideration and without notice."

The change in description of the lien instrument from encumbrance to security interest, etc., to conform to the Uniform Commercial Code will of course be noted, but the effect of the changes made in § 31–37 (f) is clear. For the first time the legislature has said that an encumbrance on a motor vehicle was not perfected against subsequent lienholders "in good faith for valuable consideration and without notice" unless notation thereof appears on the certificate of title. The result is that the legislature itself has construed former § 31–37 (f) as not imposing compliance therewith as a prerequisite to perfecting an encumbrance on a motor vehicle, and while such fact is not binding on us, I think we should not here speculate "upon legislative intent where the Legislature has put its own construction on its prior enactments." Equitable Life Assur. Soc. of the United States v. Thulemeyer, 49 Wyo. 63, 52 P.2d 1223, 1234, rehearing denied 54 P.2d 896, appeal dismissed Ham v. Equitable Life Assur. Soc. of the United States, 299 U.S. 505, 57 S.Ct. 24, 81 L.Ed. 375. See also Wyman, Partridge & Co. v. Tierney, 42 Wyo. 321, 294 P. 781, 784, 75 A.L.R. 667. Consequently, I would hold that constructive notice

was imputed to appellee and it has not met its burden on this score.

Nevertheless, I agree with the holding that the judgment of the trial court must be affirmed. Statutory benefits conferred on a mortgagee by filing the encumbrance may be lost or nullified by other conduct in connection with the transaction. It is a familiar rule often applied in motor vehicle financing "that where one of two innocent parties must suffer through the wrongful act of a third party, he who made possible the wrongful act must be the one to bear the burden." General Credit Corporation v. First National Bank of Cody, 74 Wyo. 1, 283 P.2d 1009, 1022.

There is ample in the record to show that inattention and carelessness on the part of appellant brought about the present difficulty. Most obvious was its failure to see that title was transferred to Bryan and its encumbrance noted on the certificate. Had that been done, O'Dell would not have been clothed with indicia of clear title which wholly misled appellee. Add to this the arrangement between Bryan and O'Dell whereby O'Dell Motor Company retained possession of the trucks ostensibly as a part of its stock in trade, and the entrapment of appellee was complete. To overcome this aspect of the matter appellant, of course, argues that it had no knowledge of the O'Dell-Bryan arrangement. Assuming this to be true, the plain fact is that despite the large amount of money involved it made no effort to ascertain the facts concerning title or possession and was content simply to rely upon the representations of both Bryan and O'Dell. In doing this it took the risk that the transaction was genuine and consequently was required to carry the burden of that risk when appellee became involved. General Credit Corporation v. Kapun, 237 App.Div. 694, 262 N.Y.S. 421, 423. It would have been a relatively easy matter for appellant to have ascertained that as represented, Bryan had possession at premises other than those of O'Dell Motor Company. Further than this, it is clear that Bryan, having agreed with O'Dell at

the time the mortgage was executed that O'Dell Motor Company would retain possession of the trucks and the certificates of title, would be estopped to advance any claim against appellee. See Annotation 18 A.L.R.2d 816. Appellant claims through Bryan, and as a result must likewise be held to be estopped to advance its claim against appellee. Brown v. Fidelity Union Trust Co., 126 N.J.Eq. 406, 9 A.2d 311, 325; Trolan v. Rogers, 88 Hun. 422, 34 N.Y.S. 836, 838; and 19 Am.Jur., Estoppel, § 160.