COMMUNITY STATE BANK, ROYAL CENTER *v.* CRISSINGER ET AL.

[No. 17,975. Filed December 15, 1949. Rehearing denied January 13, 1950.]

*O'Neill & O'Neill,* of Logansport, for appellant.

*George E. Tobias,* of Kokomo, for appellees.

DRAPER, C. J.—Crissinger borrowed money from the appellant bank on his two notes, which were secured by separate chattel mortgages on a tractor and trailer outfit owned by Crissinger. The mortgages were recorded in Pulaski County, in which county Crissinger resided, on November 13, 1947. Subsequent to the recording of the mortgages, and about May 1, 1948, Crissinger sold the equipment to Bobbs, who had no actual notice or knowledge of the chattel mortgages.

The appellant brought separate actions to foreclose said mortgages, making Crissinger and Bobbs parties defendant. By intervention Spahr became an additional party defendant. Bobbs and Spahr filed answer in three paragraphs, the third being by way of a "cross-complaint." Appellant's demurrer to the three paragraphs of answer was overruled and issues were closed by appellant's reply.

Spahr's rights depend upon Bobbs' rights, so we need not take particular notice of the nature of the transaction between Bobbs and Spahr. Service on Crissinger could not be had. The cases were consolidated and tried, and the court found that Bobbs had title to the equipment free and clear of the mortgage liens, and foreclosure of said mortgages was denied. The court also found against Bobbs and Spahr on their "cross-complaint."

The sufficiency of the first two paragraphs of answer to withstand demurrer need not be separately discussed. The same question arises on the assignment that the finding is contrary to law.

The parties agree there is no conflict in the evidence. The execution of the notes, the execution and recording of the mortgages, and the non-payment of the obligations secured thereby is stipulated. Bobbs and Spahr rely on the fact that when the equipment was purchased from Crissinger, he was in possession of and he exhibited to them an Indiana certificate of title which showed no lien or encumbrance in favor of the appellant bank. They say the bank carelessly and negligently permitted Crissinger to retain the certificates, which showed clear title so far as the bank was concerned, and the bank should therefore be refused the right to foreclose said mortgages as to them.

The evidence discloses that when the bank loaned the money to Crissinger, it not only recorded the mortgages, but it took from him the certificates of title. Later Crissinger asked if he might have the certificates so he could get his license. They let him take the certificates for that purpose. This was prior to May 1, 1948. Crissinger promised to return the certificates to the bank but never did so, although the bank several times requested their return both personally and by mail.

As is usual in these cases Crissinger has disappeared, leaving one of two or more innocent persons to suffer, and leaving also a vexing problem for the courts to deal with.

Under the bare provisions of Acts 1935, ch. 147, § 4; Burns' 1933 (1947 Supp.), § 51-504, the lien of a recorded mortgage is entitled to priority over subsequent purchasers. But we have held that the holder of a duly executed and recorded mortgage on automotive equipment may nevertheless lose

his favored position if he has failed, insofar as he could reasonably do so, to protect himself and others thereafter dealing in good faith, "by complying and requiring compliance with the provisions of applicable laws concerning certificates of title to motor vehicles." This was in accordance with the equitable doctrine that where one of two innocent parties must suffer a loss, it must be borne by him whose act or omission made the loss possible. *Nichols* v. *Bogda Motors* (1948), 118 Ind. App. 156, 77 N. E. 2d 905.

But it should be noted that we went no further than to say that the mortgagee should be required to comply or require compliance *with the provisions of applicable laws* concerning certificates of title to motor vehicles.

In the Bogda case we had before us the law of Michigan, which provided an easy and convenient way in which a certificate of title could be made to show a lien acquired subsequent to the time of original issue. As we understand our law, no such means is provided in Indiana. Our law neither requires nor expressly authorizes one lending money on the security of a motor vehicle to take up and hold the certificate of title until the lien has been discharged.

Nevertheless, in this case the bank did take up the certificates. They were relinquished to the borrower for a legitimate purpose, and without knowledge on the part of the bank that they would be used for the purpose of accomplishing a fraud. The bank made reasonable efforts to recover them. In the absence of a statute requiring the bank to take up and hold them, we must conclude that the court erred in holding that Bobbs' title was not subject to the lien of the mortgages.

The appellees have assigned as cross-error the court's finding against them on their "cross-complaint." In

addition to the circumstances above dealt with the pleading alleges that after Bobbs bought the equipment from Crissinger he applied for and obtained certificates of title therefor in his own name; that from May 1948 to February 1949 the bank negligently withheld from Bobbs the facts concerning its lien; that in addition to paying $950 for the equipment the appellees spent during the interval of time above mentioned $567.97 for repairs, improvements and new equipment for the tractor trailer unit. The sum of $950 was more than enough to discharge the debt. They prayed for reimbursement of the total amount and that same should be established as a first and prior lien on the equipment.

We find no evidence of negligence on the part of the bank in the respect above mentioned. As we understand the appellees, they contend that Crissinger was the agent or trustee of the appellant bank to receive the $950, and they are entitled to credit for that payment without being required to trace it into appellant's hands. The appellees seem to rely on § 6 of the Act which says the mortgage may provide that the mortgagor shall have the right to sell the property, and that the purchasers need not see to the proper application of the purchase price. We think it is sufficient to say that the mortgage contained no such provision. We do not intimate that appellees' position would be sound even though the mortgage did so provide.

Appellees further say their expenditure for repairs, improvements, etc. preserved, protected and enhanced the value of the equipment, and they say they should have a common law lien on the property. They rely on several cases which define the circumstances under which a mechanic's lien for repairs will prevail over

prior recorded chattel mortgages. See *Grusin* v. *Stutz Motor Car Co.* (1934), 206 Ind. 296, 187 N. E. 382, and *Personal Finance Company* v. *Flecknoe* (1940), 216 Ind. 330, 24 N. E. 2d 694.

But the appellees are not mechanics seeking to enforce a lien. They claim title to the equipment. We know of no law permitting the owner of motor equipment to repair or improve that equipment and thereby establish in himself a lien superior to a prior recorded mortgage on the equipment. If such could be done, the owner of mortgaged motor equipment could, by making repairs and attaching improvements, completely destroy the mortgagee's equity in the property.

The facts were fully developed at the trial and we think a retrial of the cause could serve no good purpose. The judgment will therefore be reversed, with instructions to enter a judgment in favor of the appellant.

So ordered.

NOTE.—Reported in 89 N. E. 2d 78.