CENTRAL FINANCE CO. OF PERU, INC. *v.* GARBER.

[No. 18,106. Filed March 19, 1951.]

*Frank J. Treckelo,* of Elkhart, for appellant.

*Mehl & Mehl,* of Goshen, for appellee.

ACHOR, J.—The court having examined appellant's petition for rehearing and considered the matters therein contained, grants said petition and substitutes the following opinion for that previously issued herein on December 21, 1950 (95 N. E. 2d 635.).

The facts in the case may be summarized as follows:

On August 15, 1949, one Martin Francis purchased an automobile from Canter Auto Sales in Peru, Indiana. The transaction was evidenced by a conditional sales contract showing part payment in cash, and providing that title to the vehicle was to remain in the seller until the full purchase price was paid.

A partner in Canter Auto Sales then went to appellant's office in Peru, accompanied by Francis. He took with him the contract and the dealer's certificate of title to the vehicle. The appellant's agent completed the assignment of the certificate of title. The dealer assigned the contract to appellant. The certificate of title, bearing the assignment to the purchaser and showing appellant's lien in the sum of $696.00 was delivered to Francis along with the automobile.

On August 16, Francis acquired from the Bureau of Motor Vehicles of the State of Indiana a certificate of title, called an "emergency title" by the bureau, for the same automobile. It was issued in his name and showed no liens outstanding. To obtain the "emergency title" Francis presented a written application therefor, accompanied by the certificate previously issued, duly

assigned. Francis, or someone on his behalf, had erased the notation of appellant's lien from the original certificate of title which had been assigned to him. When he made application for a new certificate of title, he made false affidavit in his application that the automobile was free of liens. Thus, no lien or encumbrance appeared in the original certificate of title and none was shown in the new certificate which was issued in his name.

On August 18, Francis sold the automobile to the appellee, a dealer in Elkhart, Indiana, for $650.00 cash and assigned to appellee said "emergency title" showing no liens. Appellee did not know of the lien and relied on the certificate of title. No payments were ever made on the contract. Francis died on September 14, 1949. Appellant located the automobile in Elkhart in possession of appellee and made a demand therefor, which was refused.

The appellant brought this action to replevy the automobile and appeals from an adverse judgment.

The facts in this case are not in dispute and in the absence of conflict therein, consideration by this court is limited to the legal consequence of the uncontradicted evidence herein.

The following is a synopsis of the Indiana statute pertaining to the issuance of certificates of title for motor vehicles and the indorsement of liens thereon as pertinent to this case:

The purchaser of an automobile must apply to the Bureau of Motor Vehicles for, and be granted a certificate of title for the vehicle before he can obtain registration (license) plates therefor or operate the vehicle on the public highways. The application for certificate of title shall show, among other things, any liens or encumbrances. If (as in this case), a certificate of title has been previously issued for such vehicle in

this state, the application shall be accompanied by such certificate of title duly assigned. The certificate of title shall be delivered to the owner in the event no lien or encumbrance appears thereon. Otherwise, the certificate of title shall be delivered to the person named in the application to receive the same. Burns' 1940 Replacement (1949 Supp.), § 47-2501.

When an automobile, for which an original certificate of title has been issued, is sold, the certificate must be assigned and delivered to the purchaser at the time of the sale or delivery of the vehicle to him. Failure so to do is a misdemeanor. Burns' 1940 Replacement (1949 Supp.), § 47-2502.

> "Any person who shall make, or cause to be made, any false statement, either in an application for certificate of title, or in any assignment thereof, . . . shall be guilty of a felony. . . . Any person, who shall alter or forge any certificate of title issued by the department pursuant to the provisions of this act, or any assignment thereof, . . . shall be guilty of a felony." Burns' 1940 Replacement (1949 Supp.), § 47-2506.

Appellee relies on the equitable doctrine that ". . . where one of two innocent persons must suffer by the acts of a third, he whose conduct, act, or omission enabled such third person to occasion the loss must sustain it if the other party acted in good faith, without knowledge of the facts, and altered his position to his detriment." 31 C. J. S. 325, § 103. See also 19 Am. Jur. 694.

The following cases are cited as authority by appellee for his position: *Community State Bank* v. *Crissinger, et al.* (1949), 120 Ind. App. 25, 89 N. E. 2d 78, 80; *Nichols* v. *Bogda Motors* (1948), 118 Ind. App. 156, 77 N. E. 2d 905; *Superior Finance Corp.* v. *The American Security Co. of Indiana, Inc.* (1940), 107

Ind. App. 461, 25 N. E. 2d 256; *Guaranty Discount Corp.* v. *Bowers* (1932), 94 Ind. App. 373, 158 N. E. 231; *LaPorte Discount Corp.* v. *Bessinger* (1930), 91 Ind. App. 635, 171 N. E. 323.

In order to reach a proper decision in this case, we must first accept the rule of law that certificates of (registration) title to motor vehicles are not in themselves proof of ownership or legal title to such vehicles. Precedent for this rule was established in the case of *Meskiman* v. *Adams* (1925), 83 Ind. App. 447, 449, 149 N. E. 93. The court stated: ". . . Appellant seeks to give the same force and effect to the certificate issued by the secretary of state under the automobile law as are given to patents for lands issued by the national government. We cannot concur in this contention. *Such patents convey title. Not so with a certificate of title issued by the secretary of state for an automobile.*" (Our italics.) Therefore, we must conclude that appellant, by reason of its conditional sales (title retention) contract was the owner of and held the legal title to the automobile in controversy in this case.

Having accepted this premise we must further consider the facts in the case at bar, both as to their relationship to each of the cases cited above and in the light of the statutes upon which they are based. We must determine therefrom whether appellant committed some such negligent act or omission as to estop it from asserting its ownership and legal title against the appellee, an innocent purchaser, who bought the automobile from Francis, who did not own or have legal title to said automobile, but who only held the photostatic copy of an altered or forged certificate of title therefor from the Bureau of Motor Vehicles.

The cases of *Superior Finance Corp.* v. *The American Security Co. of Indiana, Inc., supra,* and *Guaranty*

*Discount Corp.* v. *Bowers, supra,* and *LaPorte Discount Corp.* v. *Bessinger, supra,* are each comparable to the case at bar in that the vehicle was financed by, and conditional sales (title retention) contract executed to the claimant, concurrently with the original sale of the automobile involved and the assignment of certificate of title by the seller to the purchaser. The Indiana statutes under these circumstances make provision for the inscription of claimant's lien upon the certificate of title before it is delivered to the purchaser. Otherwise the above cases are distinguishable from the case at bar, as follows:

In the cases of *Guaranty Discount Corp.* v. *Bowers, supra,* and *LaPorte Discount Corp.* v. *Bessinger, supra,* the finance companies *failed* both to ascertain that the certificates of title were issued to the purchasers, or that their own liens were indorsed thereon. Their neglect in omitting to insert their liens as provided by statute and to ascertain that the certificates of title were delivered to the purchaser was held to be such negligence as to estop them from asserting their lien as against subsequent innocent purchasers. There was no such failure or omission on the part of the appellant in the case at bar.

In the case of *Superior Finance Corp.* v. *The American Security Co. of Indiana, Inc., supra,* appellant did not indorse its lien in the space provided therefor in the certificate of title but rather, attached it as a rider to the certificate. The rider was removed and the certificate of title was then used by the purchaser to secure a subsequent loan from the appellee, who had no knowledge of appellant's title thereto. The court found for appellee on the ground that appellant had failed to properly indorse its lien on the back of the certificate of title as provided by statute. There was no such

negligent omission on the part of appellant in the case at bar.

The cases of *Nichols* v. *Bogda Motors, supra,* and *Community State Bank* v. *Crissinger, et al., supra,* are not comparable with the case at bar in that they involved the issue of *chattel mortgages* (not title retention contracts) upon motor vehicles for which certificates of title had *previously* been issued. In both of these cases the third party whose wrongful act perpetrated the loss was the *owner* of the vehicle in question. He not only held the certificate of title but the legal title thereto, which he had a right to sell subject to mortgage thereon. In the Nichols case the mortgagee had recorded its mortgage. Nevertheless, the subsequent innocent purchaser was held to prevail over the mortgagee of such recorded mortgage. However, the distinguishable facts of that case must be clearly observed. In that case the original owner and the mortgagee were residents of the State of Michigan and the case involved a Michigan certificate of title. Michigan has a special statute which provides for the issuance of certificates of title for motor vehicles by the secretary of state and provides that "Any lien made subsequently (to original issue) where ownership does not change, shall become a part of the certificate of title by filing with the secretary of state, of an affidavit of the mortgagee that said lien has been placed upon the vehicle described in said certificate of title, and thereupon a new certificate of title shall be issued . . ." with such lien inscribed thereon. (Comp. Law Mich., 1929, § 4659 as amended.) In the Nichols case, the bank (mortgagee) never filed an affidavit as contemplated by the statute and no new certificate showing its lien was ever issued. Under these circumstances the court held that the bank had failed in a duty which it owed

(by reason of the statute) to the subsequent innocent purchaser and, therefore, that it must suffer the loss occasioned by its negligent omission.

However, in the case of Community State Bank, *supra,* where the facts were similar to those of the Nichols case, except that the parties were Indiana residents and an Indiana certificate of title was involved, a different result was reached. If we understand our law, Indiana statutes make no provision for the subsequent issuance of titles to original title holders with the inscription of liens thereon as does the Michigan statute. Therefore, mortgagees of automobiles bearing Indiana certificates of title are not charged with the special duty imposed by the Michigan statute. In the Community State Bank case, *supra,* the mortgagee bank properly recorded its mortgage but surrendered possession of the certificate of title to the mortgagor for the purpose of securing license plates for the motor vehicle involved. Appellee contended that appellant's failure to retain possession of the certificate of title was such a negligent act or omission on its part as to estop it from asserting its lien as against an innocent purchaser. However, Judge Draper in that case stated: ". . . Our law neither requires nor expressly authorizes one lending money on the security of a motor vehicle to take up and hold the certificate of title until the lien has been discharged." The bank having duly recorded its mortgage was held to have done all that it was under duty to do and, although it did not retain possession of the certificate of title, it was held to prevail over the subsequent innocent purchaser.

The case at bar is analogous to, but would seem to present a stronger case for appellant than, the Community State Bank case, *supra.* In that case the mortgagee entrusted the owner with the certificate of title,

*with no lien inscribed thereon* for the purpose of getting his license plates. Furthermore, as owner he had a property right or title in the motor vehicle which he could and did sell. Nevertheless, the mortgagee was held to prevail over the innocent purchaser.

In the case at bar appellant (owner) delivered the certificate of title to the purchaser, Martin Francis, *as required by statute* and *with its lien inscribed thereon* in order to have the certificate of title transferred to him. Francis had no property right or title which he could sell. We find no act or omission on appellant's part, such as to constitute estoppel. In fact, we perceive nothing more appellant could have done other than to have personally escorted Francis to the Bureau of Motor Vehicles and thus ascertain that the certificate of title was delivered to it in its proper form. By the same analogy the Community State Bank would have been required to accompany its mortgagor, the certificate of title holder, to the Auto License Bureau to get his license plates, but the court held to the contrary. Appellant was not obliged to anticipate that Francis would commit the felonious act of altering or forging the original certificate of title assigned to him and of making a false statement in his application for a new certificate. To do so would be anomalous.

Judgment is reversed and the cause remanded with instructions for the court below to sustain appellant's motion for a new trial.

## DISSENTING OPINION

ROYSE, J.—I do not agree with the majority opinion on rehearing in this case. I believe our original opinion by a unanimous court was based on sound principles of law and logic which have become firmly established

in this State. *LaPorte Discount Corporation* v. *Bessinger* (1930), 91 Ind. App. 635, 171 N. E. 323; *Guaranty Discount Corporation* v. *Bowers* (1932), 94 Ind. App. 373, 158 N. E. 231 (Transfer denied); *Nichols* v. *Bogda Motors, Inc.* (1948), 118 Ind. App. 156, 77 N. E. 2d 905. It seems to me the majority opinion herein wholly ignores the rule of stare decisis.

As pointed out in the original opinion herein appellant was authorized under our law to retain the certificate of title until its debt was paid. I believe this provision was for the purpose of protecting the lienholder from the type of fraud involved in this case. Having failed to exercise this right, it seems to me, under the rule announced in the above cases, appellant cannot prevail over the superior claim of appellee.

I do not agree with the majority opinion that the case of *Community State Bank* v. *Crissinger et al.* (1949), 120 Ind. App. 25, 29, 89 N. E. 2d 78, 80, supports their conclusion. In our original opinion in this case, this court, speaking through Judge Draper, in referring to that case, used this language:

> ". . ., we said: 'Our law neither requires nor expressly authorizes one lending money on the security of a motor vehicle to take up and hold the certificate of title until the lien has been discharged.' The appellant isolates that language and relies upon it for a favorable result here. It is not applicable to the facts in this case. We were not there considering a conditional sales transaction which appears of record nowhere. We were dealing with the lien of a duly recorded chattel mortgage which was given by the owner of the equipment after the certificate of title had been issued to him. In that case it was not necessary for the owner of the equipment to obtain a new certificate of title as was the case here, and the safe-guards available to the appellant in this case were not available to the creditor in that case. It might be well to add that, while it is true the

statute does not require or expressly authorize a chattel mortgagee to take up and hold a certificate of title until the lien has been discharged, it does impliedly authorize a chattel mortgagee to do so. Whether, under circumstances different from those in the Crissinger case, a chattel mortgagee might be held to be chargeable with negligence, was of course not decided in that case."

I agreed with that statement then and I do now.

I believe the judgment of the trial court should be affirmed.

Wiltrout, C. J., concurs in this opinion.

NOTE.—Reported in 97 N. E. 2d 503.