GENERAL CREDIT CORPORATION, a corporation,
*Plaintiff and Respondent,*

vs.

THE FIRST NATIONAL BANK OF CODY, a corporation,

*Defendant and Appellant,*

and

A. F. LEGGETT AND MOTOR SALES CO.,

*Defendants.*

(No. 2656; May 10th, 1955; 283 Pac. (2d) 1009)

2

For the defendant and appellant, the cause was sub-

4

mitted upon the brief of Goppert & Fitzstephens and Jerry W. Housel, all of Cody, Wyoming; oral argument by Ernest J. Goppert.

For the plaintiff and respondent the cause was submitted upon the brief of Steadman & Steadman, Cody, Wyoming; oral argument by Oliver W. Steadman.

6

8

## OPINION

HARNSBERGER, Justice.

For clarity and convenience the parties will herein be referred to as follows:—General Credit Corporation as the plaintiff; the defendant, The First National Bank of Cody, as the appellant or as the entruster; the defendant, Motor Sales Company, as the dealership or the trustee: and the defendant, A. F. Leggett, as

Liggett, (it is noted that Liggett's name is misspelled as Leggett in the title of this cause and elsewhere in the transcript and exhibits).

This litigation grows out of a dispute over priority of liens upon an automobile. The dealership is a Wyoming corporation, almost entirely owned by its President, Liggett, and his wife. This dealership was principally financed by appellant through trust receipt transactions, appellant paying for cars consigned and delivered to the dealership and taking from the dealership a trust receipt for the vehicles.

Under date August 5, 1949, with obvious purpose to take advantage of the provisions of Section 13 (1), Ch. 110, Session Laws of Wyoming, 1947, of our Uniform Trust Receipts Act, the appellant addressed the following letter to the Secretary of State, paying the required fee and receiving a receipt therefor:

"August 5, 1949

"Secretary of State
Cheyenne, Wyoming

### STATEMENT OF TRUST RECEIPT FINANCING

The entruster, The First National Bank, Cody, Wyoming, whose chief place of business within this state is at Cody, Wyoming, is or expects to be engaged in financing under trust receipt transactions the acquisition by the trustee, Motor Sales Company, whose chief place of business within this state is at Cody, Park County, Wyoming, of goods of the following description:

Motor Cars and Motor Trucks

THE FIRST NATIONAL BANK OF CODY
/s/ W. F. Messenger, Cashier
Entruster

MOTOR SALES COMPANY
/s/ A. F. Liggett, President
Trustee"

On May 22, 1950, to secure the repayment of $200,000 borrowed from appellant and evidenced by its eight promissory notes, the dealership gave appellant a chattel mortgage on "All new and used cars, automobiles, trucks and other automotive vehicles, together with equipment and spare tires thereon, owned by the Mortgagor and carried in its inventory." Following this description, the mortgage stated:

"The Mortgagor has the right to make sales of said merchandise hereby mortgaged in regular course of business, provided only that replacements shall be made for any merchandise sold from inventory with items of similar kind and description and that this Mortgage shall apply to all new and used cars, automobiles, trucks and other automotive vehicles, together with equipment and spare tires thereon, hereafter obtained by Mortgagor."

The chattel mortgage was filed for record with the local county clerk on May 23, 1950.

On May 26, 1950, appellant sent the following letter to the county clerk:

"THE FIRST NATIONAL BANK
Cody Wyoming
May 26, 1950

"Miss Eva E. Larson
County Clerk
Cody, Wyoming
My dear Miss Larson:

With reference to the $200,000.00 blanket mortgage which is filed in your office on the entire stock of automobiles, both new and used, of the Motor Sales Company, of Cody, we wish to advise that we have given the Motor Sales Company permission to sell these automobiles in regular course of business with the understanding, of course, that they replace them with other vehicles of similar kind and quality.

"For your own protection we hereby authorize you to

issue Certificates of Title on any vehicle which the Motor Sales Company of Cody, Wyoming, may present to you in regular course of their business operations without notation of this lien upon the new certificate of Title because any vehicle so sold is released from the mortgage under the terms and provisions thereof.

"Yours very truly,

FIRST NATIONAL BANK
/s/ By Ernest J. Goppert
President"

EJG/jm

The dealership also gave appellant an instrument entitled "Trust Receipt and Judgment Note"; dated October 7, 1950, which gave the description and price of the vehicle in question, acknowledged it had been received from the bank, and set forth as follows:

"The Undersigned hereby agrees to safely keep said property, to have the same properly covered with comprehensive insurance against fire, theft and collision (sic), to keep the same unencumbered and as the property of the First National Bank of Cody, Wyoming, and to pay to the First National Bank of Cody, Wyoming, the amount listed after each unit plus $1.00 and interest at the rate of 6 Percent per annum within due 10/15 days from date hereof. Upon the payment of the amount against any specific unit, title thereto shall pass to the Undersigned.

The Undersigned hereby irrevocably designates and authorizes any Attorney-At-Law to appear for the Undersigned after the maturity hereof in any Court of Record in any State of the United States either where this note may be held at or after maturity or where any of the makers or endorsers may reside or have any right, title, interest or claim in any property, either in term, time, or vacation, and to waive the issuance and service of process and confess a judgment against the undersigned in favor of the holder hereof for such amount as may then appear to be unpaid hereon including all Court costs and Fifteen Percent (15%) of amount appearing unpaid hereon for collection ex-

penses and attorney's fees; all of which the Undersigned agrees to pay. The Undersigned hereby waives all benefits of valuation, appraisement and exemption laws and presentment and protest and notice of protest. Dated this 7th day of Oct., A.D., 1950.

"ATTEST:

MOTOR SALES COMPANY

EDNA LEGGETT
  Secretary

By A. F. LEGGETT
President"

On October 17, 1950, the dealership, acting through its president, sold the automobile to Liggett, taking in payment therefor his promissory note for the full purchase price together with a chattel mortgage on the car to secure its payment .On the same day the note and mortgage was assigned to the plaintiff, the plaintiff paying the dealership the face value of the note.

On November 6, 1950, application for a certificate of title for the automobile was made by Liggett and verified by him as owner as is required by Section 60-205, Wyoming Compiled Statutes, 1945, as amended by Chapter 151, Sec. 25, Session Laws of Wyoming, 1949. The application stated the vehicle was new, that it was purchased by Liggett from the dealership and was subject to the lien of the October 17, 1950, chattel mortgage in favor of the plaintiff. It also contained a statement of transfer by the dealer as is also required by Section 60-204, W.C.S., 1945, as amended by Chapter 151, Sec. 24, Session Laws of Wyoming, 1949, as follows:

"TO BE EXECUTED BY DEALER IF VEHICLE
IS SOLD NEW

I, A. F. Liggett,      Owner      for Motor Sales Co.,
  Name of person    Position or Title      Name of Firm
do hereby transfer and warrant the title of the motor

vehicle described herein, to the owner named above, subject to the liens indicated.

Dealer License No. 11 D 1          A. F. Liggett
                                    Signature of Dealer or
                                    Authorized Agent

Subscribed and sworn to before me this 6 day of November, 1950.

(Notary Seal)          /s/ Charles W. Whitlock
                        Person Authorized to Administer Oaths"

On November 8, 1950, the county clerk issued to Liggett a certificate of title for the automobile conformably with the provisions of Chapter 60, Sec. 207, W.C.S., 1945, as amended and re-enacted by Chapter 151, Sec. 27, Session Laws of Wyoming, 1949, p. 251. The certificate of title gave the description of the automobile; showed Liggett's name as the owner; stated that the car was purchased on October 17, 1950, from the dealership and set forth that the vehicle was subject to the chattel mortgage lien in favor of the plaintiff and to no other lien.

The appellant obtained possession of the car from Liggett sometime between November 8, 1950 and November 15, 1950, but it was replevined by plaintiff in this action wherein plaintiff has proved default in payment to it of the Liggett note, and appellant has proved the dealership failed to account to and pay it the price specified in the "Trust Receipt and Judgment Note".

To establish the priority of its lien, plaintiff relied upon the chattel mortgage given to secure payment of the Liggett promissory note and assigned to it; the certificate of title issued in Liggett's name showing only plaintiff's chattel mortgage and no other as a lien or encumberance; the fact that appellant's blanket $200,000 mortgage of May 22, 1950, contained express permission to sell the automobile "in regular course of business", coupled with the letter from appellant auth-

orizing the county clerk to issue a certificate of title without notation of the $200,000 chattel mortgage "on any vehicle which the Motor Sales Company of Cody, Wyoming, may present to you in regular course of their business operations  *   *   *  ".

The appellant, however, contends (1) that having conformed to the provisions of our Uniform Trust Receipts Act by filing the statement set forth above; paying for the automobile on its delivery to the dealership and taking the dealership's "Trust Receipt and Judgment Note", the appellant retained title to the car and only entrusted it, giving the dealership the bare right to have title passed to it upon payment to the entruster of the price set forth in the instrument. Furthermore, that plaintiff knew the title to the car was in appellant and only entrusted to the dealership. (2) That its blanket mortgage of $200.000 became and remained a first lien upon the car, and neither the "permission to sell" clause in the mortgage nor the appellant's letter to the county clerk served to relinquish or waive that mortgage lien, inasmuch as a sale "in regular course of business" was not made—the purported sale to Liggett being only some sort of convenience arrangement for the benefit of the dealership.

After making findings of fact and conclusions of law favorable to the plaintiff, the court awarded the automobile to the plaintiff and the bank has appealed.

We shall discuss the appellant's contentions in the inverse order and consider first the effect of its $200,000 mortgage.

Section 59-114, Wyoming Compiled Statutes, 1945, reads, in part, as follows:

"It shall be lawful for the parties to any mortgage, bond, conveyance, or other instrument intended to operate as a mortgage of personal property as provided by

law, to insert therein permission to the mortgagor to use, handle, operate, herd, manage and control the property mortgaged, and to market, sell and dispose of such portions thereof, as may be necessary in the course of business, or to preserve and care for the same, and replace such property, or parts sold, with other property of like kind or character, which property replaced may be purchased, either with the net proceeds of the mortgaged property sold, or otherwise, all of which shall be subject to the operation and effect of such mortgage, bond, conveyance, or instrument intended to operate as a mortgage. But unless permission is expressly given otherwise in the mortgage, the mortgagor shall pay over to the mortgagee all moneys received from the sale of any part of the mortgaged property aforesaid. * * * "

This statute authorizes permission being given to the mortgagor to sell mortgaged property "as may be *necessary* in the course of business", but in the permissive clause of the mortgage before us, nothing is said about the permitted sale being necessary in the course of business. The permission granted, is to sell "in *regular* course of business". Although this wording is not in strict accord with the statute, the permission is probably within the authorization granted.

The appellant has somewhat fully discussed the effect of the "permission to sell" clause upon the validity of the $200,000 mortgage and we can agree that under our statute such a mortgage is valid and ordinarily is good as a prior lien against junior mortgages. It is therefore unnecessary to discuss the many authorities cited by appellant in support of this point. But this does not mean that the priority of the mortgage lien may not be lost. We are called upon to decide (1) was the type of sale made, a sale authorized by the permission in the mortgage, and if so, (2) did the sale divest the mortgage of its priority over a junior mortgage taken to secure payment of a note given in purchase

of the vehicle and thereafter assigned for value to the plaintiff.

In commenting upon this statute in Carroll v. Anderson, 30 Wyo., 217, 226, 218 P. 1038, 1040, this court, in a fashion, expressed the true position of a mortgagee under a chattel mortgage containing such permission when a sale has been made, as follows:

" * * * The Legislature clearly intended that a mortgagee might, by complying with the statute, permit sales in the usual course of business, *upon faith of the mortgagor's promise* to replace the property sold." (emphasis supplied).

We think it equally true that the legislature just as clearly intended that a purchaser in good faith, paying value for mortgaged property sold pursuant to such permission, should be protected; that the property should be relieved of the mortgage lien, and that the mortgagee is then left with only the mortgagor's bare promise to pay over the proceeds of sale or make replacement with other property to be substituted under the mortgage. We find nothing indicating legislative purpose to impose on the purchaser any duty to see that the promise is fulfilled *before* the property becomes freed of the mortgage lien.

As far as Liggett was concerned, there is nothing in the record which necessarily indicates he was acting in bad faith *at the time* he purchased the automobile, even though as owner of the dealership he unquestionably had knowledge of the appellant's mortgage as well as of plaintiff's entruster's interest, and although the purchase was made by him as a salesman of the dealership in accordance with what is referred to in the automobile sales business as a demonstrator's plan. So far as the evidence discloses, at the time of the sale, the transaction was a not unusual one and was no different

than his previous purchase of another automobile from the same dealership in an identical type of transaction where he had the same knowledge as to the appellant's mortgage and entruster's interest. The only difference was in what occurred *after* the sale. Following the former sale, his dealership evidently paid over or otherwise satisfactorily accounted to the appellant for the proceeds derived. It is true the *dealership* violated its promise and its trust when it failed to account to the appellant for the proceeds of the sale or to apply the monies it received from the plaintiff upon the assignment to plaintiff of the Liggett note and mortgage, to the satisfaction of its debt to the appellant or to replace the sold vehicle with another automobile to become subject to the mortgage. But this breach of faith by the dealership *after* the sale was made does not necessarily imply that at the time of the purchase Liggett was acting in bad faith.

However, be that as it may, there is no least intimation of any bad faith on the plaintiff's part when it purchased the Liggett note and mortgage from the dealership. The knowledge of the plaintiff's manager that the appellant "floor planned" automobiles and generally financed the dealership, did not place the plaintiff upon notice that the automobile here in dispute was either financed, floor planned, or claimed by appellant under a trust receipt transaction, nor did such knowledge place the plaintiff on inquiry as to those possibilities. See Commercial Credit Co. v. Barney Motor Co., et al, 10 C. 2d 718, 76 P. 2d 1181, 1183, Citizens Nat. Trust & Savings Bank of Los Angeles v. Beverly Finance Co., 127 C.A. 2d Supp. 835, 273 P. 2d 714, 716. It must be conceded, that as the mortgage was recorded, the plaintiff had constructive notice of the encumbrance, but plaintiff was equally advised that the mortgage gave permission to the dealership to sell the mortgaged property in regular course of business. It has

not been suggested that the plaintiff was under any duty to see that the dealership made correct application of the monies received by it through the sale of the vehicle and it is not disputed that the plaintiff paid full value for the note and mortgage. See North American Acceptance Corp. v. Northern Illinois Corp., 347 Ill. App. 89, 106 N.E. 2d 197, 203. This, in itself, would seem to be a badge of good faith on plaintiff's part.

Furthermore, the appellant's letter to the county clerk furnishes additional reason for holding that appellant's priority of lien under the $200,000 mortgage was lost to it as against the plaintiff. When read literally, this letter says the clerk is authorized to issue a certificate of title without notation of the appellant's mortgage, when the dealership presents to the officer a "vehicle" covered by the mortgage in regular course of its business. We have no doubt that this means that when, in the regular course of the dealership's business operations, an *application* for a certificate of title for a vehicle covered by the mortgage was presented to the county clerk, the officer was authorized to issue the certificate of title without notation of appellant's encumbrance. This would be understandable because Sec. 60-204, W.C.S., 1945, as amended by Ch. 151, Sec. 24, Session Laws of Wyoming, 1949, requires that the application contain a statement of transfer by the dealer.

It would be unreasonable to assume that the letter intended to clothe the county clerk with authority to pass upon and determine whether or not the transaction was a sale "in regular course" of the dealership's business operations, for if, as the letter says, the "vehicle" was presented to the clerk, that certainly would not apprise the officer of any of the circumstances involved in the sale which would enable the clerk to make the determination of whether or not the sale had been made in accordance with the usual practices employed in the

dealership's business. Even if, as we have indicated, it was intended that the clerk was to act when an application for a certificate of title was presented, rather than when a vehicle was presented, the information disclosed by the application would similarly be insufficient to apprise the officer as to whether or not the sale had been made in accordance with the dealership's usual business operations. So, if the letter means what we think it does, it amounted to nothing more nor less than an acknowledgment on the appellant's part that when an application for a certificate of title was presented to the clerk in the regular way, a sale permitted by the mortgage had been made and that the property sold was freed of the mortgage lien. The most that the clerk was entitled to glean from the letter was, that when an application for a certificate of title for a vehicle covered by the mortgage was submitted in the manner and form required by law, the officer was authorized to issue the certificate without notation of the appellant's mortgage lien because its unencumbered sale was permitted under the terms of the mortgage itself.

It may be that even when a recorded mortgage contains permission to sell mortgage property, the officer charged with the duty of endorsing on certificates of title all encumbrances of record is, nevertheless, required to note thereon that mortgage as an encumbrance, unless such mortgage stands released insofar as the affected property is concerned. While it was noted in argument that the letter was not recorded, we do not recall any discussion—either in brief or argument—as to whether or not the letter sufficed as a release, in view of the requirements of Sec. 59-106, W.C.S., 1945, as amended by Ch. 30, Sec. 1, Session Laws of Wyo. 1949, p. 39, the pertinent part of which is as follows:

" * * * the release, satisfaction, discharge or

assignment of chattel mortgage may be endorsed upon the original instrument on file in the clerk's office, or by an instrument of release and discharge or assignment executed and acknowledged in the manner provided for a chattel mortgage, which shall be filed with, and by the clerk be attached to the original instrument in his office.\* \* \* "

We, therefore, consider it unwise to pass upon that question at this time. However, by that letter, the appellant consented to and authorized the action of the clerk in issuing the certificate of title without notation of its lien, and it may not now escape the consequences of its own act.

The claim is made that plaintiff's failure to obtain a certificate of title within five days after the encumbrance of October 17, 1950, and the failure to record the mortgage within that time, proves the sale was not in regular course of business—appellant quoting in support of this point a part of Sec. 60-208, Wyoming Compiled Statutes, 1945, as follows:

"(f) Each owner of a motor vehicle concerning which an original or substitute certificate of title has been issued under this Chapter, who encumbers the title thereto, shall deliver said certificate to the holder of such encumbrance who, within five days thereafter, shall file or record the encumbrance instrument in the office of the County Clerk of the County in which said vehicle is located, shall concurrently deliver said certificate to such Clerk, who shall then endorse on the face of said certificate, appropriate notation showing the date and amount of such encumbrance and the name of the holder thereof and, if such Clerk issued said certificate, he shall immediately endorse the same encumbrance data on the certificate copy on file in his office but when the certificate was issued in some other County or State he shall promptly transmit to the State or County officer who issued said certificate, the same encumbrance data and such other officer shall promptly endorse same on the certificate copy on file in his office. \* \* \* "

The claim is entirely without merit, if for no other reason than that the statute relied upon only makes its requirement of "Each owner of a motor vehicle concerning which an original or substitute certificate of title *has been issued*". No certificate of title for the vehicle in question was issued until November 8, 1950, and on that same day encumbrance of October 17, 1950 was filed for record and also endorsed upon the certificate of title as an encumbrance, as required by our law. We also note that the trial court obviously felt the explanation which was given for the delay in the issuance of the certificate of title satisfactory, and in this we agree.

Before leaving the subject of the $200,000 mortgage, perhaps we should mention that appellant attaches considerable importance to the definition of "Buyer in the ordinary course of trade", as set forth in the Uniform Trust Receipts Act, Chapter 110, Sec. 1, Session Laws of Wyoming, 1947, p. 120, as follows:

"Section 1. In this Act, unless the context or subject matter otherwise requires:

" 'Buyer in the ordinary course of trade' means a person to whom goods are sold and delivered for new value and who acts in good faith and without actual knowledge of any limitation on the trustee's liberty of sale, including one who takes by conditional sale or under a pre-existing mercantile contract with the trustee to buy the goods delivered, or like goods, for cash or on credit. 'Buyer in the ordinary course of trade' does not include a pledgee, or mortgagee, a lienor, or a transferee in bulk.   *   *   *   "

Quoting the above statute, appellant underscores for emphasis the word "mortgagee" and stresses the fact that a mortgagee is eliminated from the definition. We do not sense any relevancy in this as the buyer in this case was Liggett who was not a mortgagee. See B.C.S. Corporation v. Colonial Discount Co., Inc., 169 Misc.

711, City Ct. of New York, N. Y. Co. (1938), 8 N.Y.S. 2d 65.

It will also be readily observed that the definition is not only limited in its application to the Uniform Trust Receipts Act but, it is also made subject to certain other qualifications. Furthermore, the definition of a "Buyer in the ordinary course of trade" in its relation to the provisions of the Uniform Trust Receipts Act, is not necessarily determinative of the question as to what constitutes a sale in regular course of business under the terms of the mortgage.

It is argued that there was no sale in regular course of business because it was made by Liggett's dealership to Liggett personally, inferring that this spelled bad faith; that while ostensibly it was a sale—in reality, being a demonstrator plan transaction—the dealership still owned the car. In consequence, appellant says the transaction cannot be a sale in regular course of business and hence cannot affect the mortgage lien of the appellant.

Now the evidence shows that while "demonstrator plan" sales constituted only a small part of the dealership business and of the plaintiff's financing business, such sales contracts were usual and valuable to motor vehicle sales businesses and aided in sales promotion; that the practice of making such sales was general throughout the country; that such sales were generally financed by financing companies and the plaintiff had financed similar sales for the dealership as well as for a considerable number of other dealers in Cody; that sales made under the "demonstrator plan" were exempt from the requirements imposed by regulation "W" of Consumer Installment Credit Regulations, in force at that time (see 1949 Ed., Code of Federal Regulations, Title 12, Banks and Banking, Ch. II, Subchapter A, Part 222, Sec. 222.7, par. (b) pp 138, 139, 143; Federal

Register, Vol. 13, No. 164, Reg. "W", August 21, 1948, pp. 4865, 4867) ; that the plan was only available for sales to salesmen of automobile dealers, but that such demonstrator plans had been generally used for many years prior to the advent of regulation "W".

With such a history of sales practice for its background, it is not at all clear to us just why this type of sale—which for many years has been so generally used in the automobile sales industry as a sales promotion adjunct, which has been accepted by the financing world for one of its several plans for financing sales of automobiles, and which was considered such a necessary practice in the automobile sales business that it was made the subject of special provision excepting it from restrictions imposed by regulation "W"—should be challenged as being a sale not made "in regular course of business".

We have carefully examined authorities submitted by the appellant in support of its foregoing contentions, but find them to be of little value. Colonial Finance Co. v. McCrate, 60 Ohio App. 68, 19 N.E. 2d 527, was based principally upon an Ohio statute, making a distinction between a general purchaser as a member of the buying public at retail and a sale at wholesale by a dealer to another dealer. We have no counterpart of such a statute. Fehr v. Campbell, 288 Pa. 549, 137 A. 113, holding the purchaser of a negotiable instrument was not an innocent purchaser for value without notice in the regular course of business, was influenced because there were facts known to the purchaser which put the purchaser upon notice that the instrument was being negotiated under questionable circumstances. Jenkins v. Planters' & Mechanics' Bank, 34 Okla. 607, 126 P. 757, was similar, in that the court held the endorsement by an officer of a corporation of a negotiable instrument payable to the corporation for the purpose of pledging

the instrument as security for the officer's own indebtedness, was a circumstance which should have placed the purchaser on notice that it was not being transferred in the regular course of business. In Crumrine, et al, v. Reynolds, 13 Wyo. 111, 78 P. 402; Casper Motor Co., v. Marquis, 31 Wyo. 115, 223 P. 764; and C. I. T. Corp., v. Francis, Sheriff, 54 Wyo. 421, 93 P. 2d 507, all holding that, where it was contended a purchaser of property subject to an unrecorded mortgage was without notice of the lien, the burden of proof was upon the party so contending, are not helpful because the mortgage here in question was recorded, and it is not disputed that the plaintiff was charged with constructive notice of the same. The point in this case is, that the mortgage itself permitted the sale and appellant's letter expressly authorized the county clerk to issue a certificate of title without notation of the mortgage lien. Pacific Finance Corp. v. Hendley, et al, 103 Cal. App. 335, 284 P. 736, merely held that the burden of proving an estoppel rests upon the party asserting it, and that an element of estoppel to be proved in that case was that the mortgagee had no knowledge of the vendor's title. It is our view that none of these cases lessen the force of what we have said.

The balance of authorities offered are considered as bearing only upon appellant's first contention, as they have to do with transactions coming within the purview of the Uniform Trust Receipts Act, which matter we will now discuss. The appellant's claims that having conformed to the provisions of that act by filing the required statement with the Secretary of State, paying for the automobile on its delivery to the dealership and taking the dealership's trust receipt and judgment note, it retained title to the car and only entrusted it, giving the dealership the bare right to have title passed to it upon payment to the entruster of the price set forth in the instrument.

At the outset we must say that we do not find any evidence to support the appellant's statement that the plaintiff knew the title to the car was in appellant and appellant had only entrusted it to the dealership. As previously noted, the knowledge of plaintiff's manager, —that the appellant "floor planned" automobiles and generally financed the dealership,—did not amount to knowledge on plaintiff's part that the title of the car in dispute was in the appellant or that appellant had any interest therein.

While appellant's claim of prior right by virtue of the trust receipt transaction seems to assume that any superior right of the plaintiff must arise from a sale "in the ordinary course of trade", it seems to us that plaintiff's purchase of the Liggett note and mortgage, if made in good faith, for value, and in the customary manner, is protected under the provisions of the Uniform Trust Receipts Act even though the sale to Liggett was not made in the ordinary course of trade.

Our Uniform Trust Receipts Act, Ch. 110, Session Laws of Wyo., 1947, makes two provisions in limitation of the protective rights accorded an entruster. Both appear in Section 9.

The first limitation is found in subsection (1) as follows:

"(a) Nothing in this Act shall limit the rights of purchasers in good faith and for value from the trustee of negotiable instruments or negotiable documents, and purchasers taking from the trustee for value, in good faith, and by transfer in the customary manner instruments in such form as are by common practice purchased and sold as if negotiable, shall hold such instruments free of the entruster's interest; and filing under this Act shall not be deemed to constitute notice of the entruster's interest to purchasers in good faith and for value of such documents or instruments, other than transferees in bulk.

"(b) The entrusting directly, by agent, or through the intervention of a third person) of goods, documents or instruments by an entruster to a trustee, under a trust receipt transaction or a transaction falling within Section 3 of this Act, shall be equivalent to the like entrusting of any documents or instruments which the trustee may procure in substitution, or which represent the same goods or instruments or the proceeds thereof, and which the trustee negotiates to a purchaser in good faith and for value."

Section 1, p. 121 of the same Act, supra, defines "Purchase" and "Purchaser" as follows:

" 'Purchase' means taking by sale, conditional sale, lease, mortgage, or pledge, legal or equitable.

" 'Purchaser' means any person taking by purchase. A pledgee, mortgagee or other claimant of a security interest created by contract is, insofar as concerns his specific security, a purchaser and not a creditor."

An excellent analysis of these provisions, which are practically identical with those of corresponding sections of California's Civil Code, was made by the California Court in Citizens Nat. Trust & Savings Bank of Los Angeles v. Beverly Finance Co., 127 C.A. 2d Supp. 835, 273 P. 2d 714, 716, 717. The facts and the contentions there made closely parallel those presented here. The trustee dealership had sold to its bookkeeper or accountant by conditional sales contract an automobile entrusted to the dealership under a Trust Receipt transaction. The plaintiff bank purchased for full value the conditional sales contract from the trustee without, however, knowing that the bookkeeper was an employee of the trustee. Upon default of the purchaser, plaintiff brought action to recover the car. The court gave judgment in favor of plaintiff and the entruster appealed, claiming error because both the purchaser and the plaintiff bank had notice of the entruster's security interest, and that whether or not the plaintiff

had knowledge of the entruster's interest, the purchase was not bona fide. The only significant difference between this California case and the instant one, lies in the fact that the plaintiff here did know of the relationship of Liggett, the purchaser, to the dealership, and that the sale to Liggett was outright with mortgage back to secure payment of the purchase price note. However, the California court expressly said in Citizens Nat. Trust & Savings Bank of Los Angeles v. Beverly, supra, 716, "We find it unnecessary to consider defendant's contention that Harris was not a bona fide purchaser in good faith, for, if it were conceded that he was not, this would not compel the conclusion that the judgment in favor of the plaintiff bank is erroneous. * * * ". As indicated by our previous citation of this case, the court further held that the knowledge by plaintiff that the entruster "floored" cars for the dealership was insufficient to charge plaintiff with knowledge of the entruster's interest in the particular car. The decisive question was said to be "What are the respective rights, under a trust receipt, of an entruster of an automobile and a bank which, without notice of the entruster's interest, finances the purchase thereof by a third party from the trustee and in connection with which it takes an assignment of the conditional sales contract from the latter?" Having then quoted as we have the applicable paragraphs of their law, which fortunately bear the same paragraph indicia as our own, the opinion, Citizens Nat. Trust & Savings Bank of Los Angeles v. Beverly, supra, 717, stated:—

"Thus, under (a), purchasers 'taking from the trustee for value, in good faith, and by transfer in the customary manner instruments in such form as are by common practice purchased and sold as if negotiable, shall hold such instruments free of the entruster's interest', and under subdivision (b), although the original subject of the entrustment was 'goods' rather than 'instruments'

or 'documents,' the entrustment shall be deemed to encompass 'any documents or instruments which the trustee may procure in substitution, or which represent the same goods   *   *   *   or the proceeds thereof, and which the trustee negotiates to a purchaser in good faith and for value.'

"Here it is clear that the conditional sales contract between CLA and Harris was procured by the trustee in substitution for or represents the same *goods* (the Oldsmobile) or the proceeds thereof, and it remains to determine (1) whether plaintiff was a 'purchaser' for value of the contract, and (2) if it was an instrument in such form as by common practice is purchased and sold as if negotiable." '

Following the above statement, the court found that both of the matters last mentioned should be determined affirmatively and thereupon the court upheld the judgment in the case which had found the plaintiff's rights to be superior to those of the entruster. Here also, as in the cited case, there is no dispute but that the plaintiff paid full value for the note and mortgage, and these instruments are certainly "in such form as by common practice is purchased and sold as if negotiable'".

In another somewhat similar case, Canandaigua National Bank & Trust Co. v. Commercial Credit Corp., 204 Misc. 946, 126 N.Y.S. 2d 316, it was held that where an individual borrowed money from a bank after representing that he wanted it to enable him to purchase by conditional sales contract an automobile from his own dealership, representing to the bank that the vehicle was free of encumbrance, although in fact it was entrusted to the dealership, that although the individual never became a buyer in ordinary course of trade, the bank which took the assignment of the conditional sales contract of purchase without knowledge that there was not a bona fide sale, acquired the same for value, in good faith and without knowledge of any limitation of the trustee's right to sell and, therefore,

acquired the car in ordinary course of its business, free of the entruster's interest.

In North American Acceptance Corp. v. Northern Illinois Corp., 347 Ill. App. 89, 106 N. E. 2d 197, 201, while holding against the appellant because appellant knew of the entruster's interest and failed to prove that it paid value for the assignment to it of the purchased instruments, thus not being a purchaser in good faith and for value, the court stated, " * * * If, however, appellant was a purchaser * * * of these instruments in good faith and for value, then, it, appellant, took title to this car free from the interest of appellee (entruster) * * * " (Parenthesis supplied.)

Appellant seeks to minimize the importance here of Commercial Credit Co. v. Barney Motor Co., 10 C. 2d 718, 76 P. 2d 1181, by pointing out that the evidence in that case showed affirmatively the purchaser had no actual knowledge the vehicle was in fact owned by the entruster, but this criticism falls when it appears from the facts before us that plaintiff had no knowledge of the entruster's interest. This leaves the case strongly supporting many of the conclusions we have reached.

The second limitation upon an entruster's rights is found in subsection (2) of section 9, Ch. 110, Session Laws of Wyo. 1947, of the Uniform Trust Receipts Act, supra, as follows:

"(a) (i). Where the trustee, under the trust receipt transaction, has *liberty of sale* and sells to a buyer in the ordinary course of trade, whether before or after the expiration of the thirty day period specified in Subsection 1 of Section 8 of this Act, and whether or not filing has taken place, such buyer takes free of the entruster's security interest in the goods so sold, and no filing shall constitute notice of the entruster's security interest to such a buyer." (emphasis supplied).

While the instrument relied upon as a Trust Receipt in this case and entitled "Trust Receipt and Judgment Note" does not contain specific "liberty of sale", we may assume that as the dealer was given possession of the automobile, subparagraph (c) of the same subsection (2) above, sufficiently supplements the "Trust Receipt and Judgment Note" so as to give the trustee the "liberty of sale" necessary to make subparagraph (a) (i) above, applicable, as it says:

"(c) If the entruster consents to the placing of goods subject to a trust receipt transaction in the trustee's stock in trade or in his sales or exhibition rooms, or allows such goods to be so placed or kept, such consent or allowance shall have like effect as granting the trustee liberty of sale."

In other words, the "Trust Receipt and Judgment Note", aided by delivery of the automobile to the dealer, made the transaction one in which the trustee had "liberty of sale" in the ordinary course of trade, free of the entruster's interest, see General Motors Ac. Corp. v. Associates Disc. Corp., 38 N.Y.S. 2d 972, 977.

Having already expressed our views as to the Liggett sale being one in "regular course of business", it would serve no good purpose to further amplify them by considering the differences present in the phrases "in the ordinary course of trade" and "in regular course of business", inasmuch as we feel the entrustment and rights under the mortgage must in this case be considered as part and parcel of the same over-all transaction.

Adverting once again to appellant's claim under its mortgage, it must be plain that even though that mortgage became a valid encumbrance of the automobile as a substituted or after-acquired chattel, its lien did not attach until the vehicle was acquired by appellant. Consequently, the instrument called a "Trust Receipt

and Judgment Note" and the previously executed chattel mortgage, given by the dealership were, in effect, contemporaneously executed instruments and should be considered at least, if not construed, together. Slane v. Curtis, 39 Wyo. 1, 269 P. 31; 17 C.J.S. 714, §298; 12 Am. Jur. 781, §246; Am. Law Institute, Restatement of the Law of Contracts, Vol. 1, §235 (c). There can be no doubt but that both instruments were intended by the parties as security for the repayment of money furnished by appellant in behalf of the dealership. So far as concerns the time the interest in such security was acquired under either instrument, there can be no other conclusion than that it occurred simultaneously, therefore, any question of whether the one was intended to abrogate, supersede, supplant or supplement the other, is obviated. This leads us to believe there is little merit in the theory that because the "Trust Receipt and Judgment Note" recites the trustee is to keep the automobile as the property of the entruster, and that "title" shall pass to the trustee upon payment of the specified price, the entruster was the real owner of the chattel.

The appellant's contrary authorities, offered in support of its claim as an entruster, for one reason or another, are not persuasive. In Commercial Credit Corp. v. Horan, Bailiff, et al, 325 Ill. App. 625, 60 N.E. 2d 763, an entruster's action against the trustee's judgment creditor, the entruster succeeded only because the creditor failed to prove the debtor had ever owned the vehicle in dispute. In B.C.S. Corporation v. Colonial Discount Co., Inc., 169 Misc. 711, City Court of New York, New York Co. (1938), 8 N.Y.S. 2d 65, another entruster's action against the purchaser of a note and mortgage which had been given in purchase of a vehicle, the decision favored the entruster because the purchaser had actual notice of the entruster's interest, which, as has been shown, is not the case here. In

Walbrun v. Babbitt, 83 U.S. 577, an action in bankruptcy to recover value of stock which was sold in bulk, the sale was held insufficient because not made in ordinary course of business. This is a case far removed from the retail sale made here. The Uniform Trust Receipts Act expressly declares a bulk sale is not a sale in ordinary course of trade. Tropical State Bank v. Sunshine Motor Co., 137 Fla. 703, 188 So. 595, was an action between an entruster and one to whom a vehicle was pledged to secure a loan made to the trustee. There was no sale at all, but only such a pledge as the Uniform Trust Receipts Act also says is not a sale in ordinary course of trade. National Funding Corp. of Calif. v. Stump, 57 C.A. 2d 29, 133 P. 2d 855, was an action in claim and delivery. A car was entrusted to a dealership whose salesman drove the car 100 miles from the dealership's place of business and secured from a bank a loan to himself, by executing unto himself, in the presence of the bank's officer, a dealer's report of sale and application for registration, which indicated that a sale of the car had been made to him. He also exhibited to the bank a copy of an invoice for the car from the distributor which was not marked paid, and on which appeared "Sold to Bank of America, Victorville, for (the salesman)", together with a letter from the distributor, stating that the salesman was an authorized dealer. The court held these circumstances should have placed the bank on guard, as the slightest inquiry would have disclosed the true ownership of the car. At least two important differences distinguish this case from the one before us. First, in the California case, the invoice exhibited to the bank apprised it that there was an entrustment, and secondly, the fact that the salesman drove 100 miles away from the usual place of business to obtain the loan was, in the court's opinion, a suspicious circumstance. In Pacific Finance Corporation v. Hendley, et al, 103 Cal. App. 335, 284 P. 736,

the most the court held was, that where an estoppel was claimed by a subsequent mortgagee against the vendor under a conditional sales contract, the fact that the mortgagee was without knowledge of the vendor's title was a material element of the estoppel, and that the burden of proving that element was upon the party asserting it.

Appellant has also filed a reply brief in which is cited a miscellaney of summary from 18 A.L.R. 2d, pp. 818, 823, 825, 829, 847, which point out that where the owner is free from fault an innocent purchaser who relies upon the seller's possession of a certificate of title, when the seller is in fact without title, will not be protected. Such authorities are valueless here because this appellant, purporting to be the owner of the vehicle, was the one responsible for the permission to the dealership to sell the vehicle and was the author of the letter by virtue of which the certificate of title was issued without notation of appellant's claimed interest. For the same reason, neither First Nat. Bank of Nevada v. Swegler, 336 Ill. App. 107, 82 N.E. 2d 920, nor Central Finance Co. of Peru, Inc., vs. Garber, 121 Ind. App. 27, 97 N.E. 2d 503, also cited, are helpful, because in those cases the owners did nothing to cause the certificate of title to issue. General Finance Corp. v. Nimrick, et al, 319 Ill. App. 98, 48 N.E. 543, obviously decided on a factual situation vastly different from this case, also found the owner faultless. Associates Discount Corp. v. Davis Motor Sales, 275 App. Div. 745, 87 N.Y.S. 2d 757, is completely without point, as the owner was the assignee for value of the vendor under a conditional sales contract, and the fault in having a certificate of title wrongfully issued lay not with the assignee owner, but with the original vendor. Also in Automobile Banking Corp. v. Draper, 129 Pa. Superior Ct. 501, 195 A. 441, there was an out-and-out forgery

by the dealer, but the owner had no connection with this forgery and hence was without fault. Commercial Credit Co. v. American Mfg. Co., 155 S.W. 2d 834, is another case where the owner was found to be without fault.

The appellant has addressed us with two voices. In its character as a mortgagee it speaks through an instrument which says the mortgagor has title to the automobile and that permission to sell was given the mortgagor. Speaking further through a letter this voice says, when an application for a certificate of title is presented, the clerk should issue the certificate without notation of the mortgage. As a result, there was placed in the hands of plaintiff evidence of a title which was clear except for plaintiff's own encumbrance. Next, in its role as the purported owner, appellant claims that all along it was possessed of title which it gained through a trust receipt transaction and with which it had never parted. In this secret guise, appellant now seeks to escape the commitments made in its character as mortgagee. Should this court allow itself to take so narrow and myopic a view, as failed to recognize the gross inequity and injustice of losing to the plaintiff the fruits of its purchase under these circumstances, we might as well decide that it was the intent of the legislature, in adopting the Uniform Trust Receipts Act, to undo and set at naught the advances it has heretofore made by the enactment of our recording statutes. In similar or related types of transactions wherein title or interest is withheld or reserved, as in conditional sales contracts or wherein a lien or preference right is obtained, as by mortgage, our statutes require that instruments evidencing such interest be placed of record for all the world to see or be absolutely void as against those who subsequently in good faith, for value, and without notice acquire interest in the

property. It is, of course, unfortunate that either the appellant or the plaintiff must suffer loss, but the law has long recognized the justice of holding that where one of two innocent parties must suffer through the wrongful act of a third party, he who made possible the wrongful act must be the one to bear the burden. See Peoples Finance & Thrift Co. of Visalia v. Bowman, 58 C.A. 2d 729, 137 P. 2d 729. No demand of modern business practice can justify construing the Uniform Trust Receipts Act as a device through which to escape requirements for recording instruments which give evidence of retained or obtained interest in chattels offered for sale, and habitually sold, as though in un-encumbered ownership of the party in possession, if such rights are to prevail.

In conclusion we may summarize by saying, we are convinced from the record that the plaintiff in good faith, without notice and for value, purchased in a customary manner the Liggett note and mortgage which had been substituted for the entrusted vehicle; that these instruments are in such form as is, in common practice, bought and sold as if negotiable, and that the plaintiff is therefore entitled to the mortgaged property or the proceeds thereof, free of any and all rights of the appellant as an entruster by virtue of its Trust Receipt and Judgment Note, and free of any lien asserted by appellant as a mortgagee under the $200,000 blanket mortgage. The judgment will therefore be affirmed.

*Affirmed.*

RINER, C. J. and BLUME, J., concur.